OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. Watts, Appellee, v. Schottenstein Stores
Corporation et al., Appellants.
[Cite as State ex rel. Watts v. Schottenstein Stores Corp.
(1993),        Ohio St.3d        .]
Workers' compensation -- Firing may, but does not
     automatically, bar wage loss compensation under R.C.
     4123.56(B).
     (No. 92-2399 -- Submitted September 14, 1993 -- Decided
December 29, 1993.)
     Appeal from the Court of Appeals for Franklin County, No.
91AP-1355.
     Appellee-claimant, Brenda J. Watts, was injured on March
2, 1987 while in the course of and arising from her employment
with appellant Schottenstein Stores Corporation
("Schottenstein").  Her workers' compensation claim was allowed
and temporary total disability benefits were awarded.
     In mid-1988, claimant began a rehabilitation program
implemented by Upjohn HealthCare Services ("Upjohn"), a private
firm hired by claimant's self-insured employer.  On August 12,
1988, claimant, Schottenstein, Upjohn and appellant Industrial
Commission's Rehabilitation Division entered into a "Gradual
Return to Work Contract."  Under the contract's terms,
Schottenstein agreed to allow claimant to return to  work on a
part-time basis and gradually work up to a full eight-hour
day.  The claimant was to resume full-time work on August 29,
1988, with "no extension of limited hours unless specifically
agreed to by employer, physician, claimant and the
Rehabilitation Division."
     Claimant's last day of part-time employment was ultimately
extended to October 21, 1988, with full-time work to resume
three days later.  Claimant did not come to work on October 24
and did not contact her employer, as company policy required.
The same was true on October 25 and 26.  Immediately
thereafter, Schottenstein, consistent with its unexcused
absence policy, fired claimant.
     Approximately eleven months later, claimant moved for wage
loss compensation under R.C. 4123.56(B).  Accompanying her
motion was the May 25, 1989 report of claimant's attending

physician, Charles B. May, who restricted claimant to four hours per day of light duty work. He stated that claimant could not do her former duties without the time limitation imposed. Claimant also submitted sworn statements attesting to an inability to secure other work within her physical capabilities through July 31, 1990. Claimant began working as a self-employed housecleaner on August 1, 1990, but alleges that she is making considerably less than she did at Schottenstein.

The commission had claimant examined by Dr. H. Tom Reynolds. Aware that claimant had already completed rehabilitation, he concluded:

"I do feel the claimant could perform in an eight hour day, taking into consideration the job modifications that were made as a result of her rehab plan. I do not feel she could return to her previous level of employment without these job modifications, and this inability would be permanent."

A commission district hearing officer denied claimant's compensation request, writing:

"* * * Claimant was given a written job offer in August 1988. The offer was presented in conjunction with the rehabilitation plan * * *. The offer entailed a return to work plan consisting of specific modifications of the duties of her former position, working only four hours a day for the first 4 weeks, then working 8 hours a day thereafter. Claimant worked 4 hours a day for 8 weeks and was then terminated for failing to report for 8 hour days[.] Dr. Reynolds indicates that the claimant is capable of working for 8 hours with the job modifications outlined in the rehabilitation plan. Therefore, the claimant is not suffering a wage loss. She was able to find work consistent with her physical capabilities.

"This order is based on the medical reports [sic] of: Dr. H.T. Reynolds."

The order was administratively affirmed.

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying wage loss compensation. The court of appeals agreed, finding that Dr. Reynolds's report was not "some evidence" supporting the commission's decision. It also found that the order did not adequately explain its reasoning as State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, 567 N.E.2d 245, required. The court issued a limited writ which vacated the commission's order and returned the cause to the commission for further consideration and an amended order.

This cause is now before this court upon an appeal as of right.

Larrimer & Larrimer and David Swanson, for appellee.
Porter, Wright, Morris & Arthur and Darrell R. Shepard, for appellant Schottenstein Stores Corp.
Lee I. Fisher, Attorney General, and William J. McDonald, Assistant Attorney General, for appellant Industrial Commission.

Per Curiam. R.C. 4123.56(B) provides:
"Where an employee * * * suffers a wage loss as a result of returning to employment other than his former position of

employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

Supplementing the statute, Ohio Adm. Code 4121-3-32(D) reads:

"In injury claims in which the date of injury * * * is on or after August 22, 1986, the payment of compensation [f]or wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

A claim for wage loss compensation has two components - - actual wage loss and causal relationship between the allowed condition and the wage loss. The commission's order is misleading because it states that claimant experienced no wage loss. The evidence, however, suggests otherwise. Appellants do not dispute claimant's assertion that she was unemployed from the date she was terminated through July 31, 1990. Appellants also have not challenged her claim that self-employment has been less lucrative than her position with Schottenstein. Thus, there is no real disagreement that after she was terminated claimant made less than she would have at her old job.

Closer examination suggests that the commission instead based its decision on a perceived lack of causal relationship between claimant's injury and reduced wages. The commission essentially ruled that "but for" her employment discharge, claimant would still be at Schottenstein with no diminution of earnings. This finding raises a question of first impression for our consideration: Does a claimant's discharge from his or her position of employment automatically preclude R.C. 4123.56(B) wage loss benefits?

Arguing in the affirmative, appellants rely on the voluntary employment separation principles that govern temporary total disability. Temporary total disability compensation has traditionally been denied to those who have voluntarily abandoned their former position of employment. See, e.g., State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451; State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42, 517 N.E.2d 533; State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44, 531 N.E.2d 678; State ex rel. McGraw v. Indus. Comm. (1990), 56 Ohio St.3d 137, 564 N.E.2d 695.

We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly

undertook, and may thus take on a voluntary character. See Ashcraft. We decline, however, to extend these voluntary abandonment principles to R.C. 4123.56(B) wage loss because wage loss is broader in scope than temporary total disability. As explained by a Georgia court in United States Fid. & Guar. Ins. Co. v. Giles (1986), 177 Ga. App. 684, 685, 340 S.E.2d 284, 285:

"It is not the ability to perform the particular job in which one was engaged at the time of injury which is the determining factor in a case such as this, but rather whether the claimant's inability to find any work for which he is suited by training and experience is a result of the injury suffered." (Emphasis sic.)

In Giles, the claimant, an insurance claims adjuster, resumed his duties after injury, only to quit in favor of better work. He was later laid off and was unable to find another job, prompting his claim for wage loss compensation. His former employer challenged claimant's compensation eligibility, arguing that his inability to secure other claims adjuster work was due, not to the injury, but to economic conditions.

The Georgia Court of Appeals upheld the claimant's right to benefits. The court stressed claimant's construction experience, teaching degree and extensive coaching background, and held that "while [claimant's] inability to find work as a claims adjuster may not be related to his injury, his inability to find other work for which he is suited is related to his injury." (Emphasis sic.) Id., 77 Ga. App. at 685, 340 S.E.2d at 285.

We find particularly persuasive the reasoning advanced by the Minnesota Supreme Court in Marsolek v. George A. Hormel Co. (1989), 438 N.W.2d 922. There, after his industrial injuries, the claimant returned to work and was assigned to light duty. Claimant's activities during a later strike, however, prompted his dismissal. Unable to find other employment, claimant sought compensation for lost wages.

The high court found that claimant's firing did not automatically foreclose wage loss compensation, starting its analysis "with the basic tenet that an employer is liable for the payment of compensation benefits * * * when an employee suffers a wage loss that is attributable to a work injury." Id. at 923.

The court concluded:

"[B]y focusing so much effort on the * * * effect of the misconduct, the parties' attention has been diverted from the essential purpose of the [Workers' Compensation] Act, * * * which is to compensate injured workers for a wage loss that is attributable to a work injury. Accordingly, for purposes of clarification, we now hold that a justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances * * *." Id. at 924.

Ohio's workers' compensation system was created "[f]or the

purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment * * *." Section 35, Article II, Ohio Constitution.  Like the court in Marsolek, supra, we find that those purposes are not furthered by denying a claimant even the opportunity to show the potential impact on the claimant's ability to do other work. Accordingly, we hold that firing may, but does not automatically, bar wage loss compensation under R.C. 4123.56(B).

In this case, the commission did not evaluate the effect that claimant's injury may have had on her ability to get or keep other employment.  For this reason, we affirm the judgment of the court of appeals and return the cause to the commission for further consideration and amended order.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.