THE STATE EX REL. McGONEGLE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. McGonegle v. Indus. Comm.* (1996), 76 Ohio St.3d 272.]

(No. 94–1689—Submitted May 21, 1996—Decided August 7, 1996.)

274

276

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Jetta Mencer,* Assistant Attorney General, for appellee commission.

*Taft, Stettinius & Hollister* and *Charles M. Stephan,* for appellee Zumbiel Company.

DOUGLAS, J. R.C. 4123.56(B) provides that:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the

claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

Supplementing the statute, Ohio Adm.Code 4121–3–32(D) provides that:

"In injury claims in which the date of injury, or in occupational disease claims in which the date of disability, is on or after August 22, 1986, the payment of compensation or wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

In *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204, this court recognized that "[a] claim for wage loss compensation has two components—actual wage loss and causal relationship between the allowed condition and the wage loss." Thus, a claimant seeking wage loss compensation must establish the existence of a causal connection between the industrial injury and his or her actual wage losses.

Here, the commission denied appellant's motion for wage loss compensation, finding that any wage loss suffered by appellant was not the direct result of his allowed condition for industrial bronchitis. Specifically, the commission conclud-ed that there was no causal relationship between appellant's allowed condition and his actual lost wages because: (1) appellant had been discharged from his employment with the Zumbiel Company for excessive tardiness and absenteeism, and not as a result of his industrial injury, and (2) the medical evidence indicated that appellant's industrial bronchitis had resolved itself. However, we find that neither appellant's discharge from the Zumbiel Company nor the medical evi-dence cited and relied upon by the commission constitutes a valid basis for denying appellant's claim for wage loss compensation.

In *Schottenstein, supra,* 68 Ohio St.3d at 123, 623 N.E.2d at 1205, this court held that "firing may, but does not automatically, bar wage loss compensation under R.C. 4123.56(B)." In *Schottenstein,* we declined to extend the voluntary employment separation principles applicable in cases involving temporary total disability compensation to R.C. 4123.56(B) wage loss claims, stating: "We agree that firing can constitute a voluntary abandonment of the former position of

employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * * We decline, however, to extend these voluntary abandonment principles to R.C. 4123.56(B) wage loss because wage loss is broader in scope than temporary total disability." *Schottenstein, supra,* 68 Ohio St.3d at 121, 623 N.E.2d at 1204. The upshot of our decision in *Schottenstein* is that firing is *not* a determinative factor to be considered in a wage loss claim. In this regard, *Schottenstein* is consistent with the provisions of R.C. 4123.56(B). Specifically, R.C. 4123.56(B) does *not* tie an injured worker's right to wage loss compensation to the continued possibility of future employment at the job where the injury occurred. Accord *State ex rel. Stevenson v. Indus. Comm.* (Sept. 30, 1992), Franklin App. No. 91AP–1152, unreported, 1992 WL 250417. Rather, the statute (and Ohio Adm.Code 4121–3–32[D] ) clearly contemplate that an injured worker may seek employment at his or her former place of employment *or may seek employment elsewhere* consistent with his or her physical capabilities.

Moreover, the medical evidence in this case indicates that appellant could not have returned to his former position of employment at the Zumbiel Company *regardless of the firing:* In its order denying wage loss compensation, the commission cited and relied upon a series of medical examination reports prepared by Dr. James R. Donovan, Jr. In his first narrative report dated August 23, 1988, Donovan determined that appellant had developed industrial bronchitis while working in the wash-up and bailer area of the Zumbiel Company facility, and that the industrial bronchitis had been caused by appellant's exposure to caustic soda. In this report, Donovan concluded that the symptomatology associated with appellant's industrial bronchitis had resolved itself, but that appellant could be expected to suffer a resurgence of the pulmonary symptoms if he ever returned to his former position of employment with the Zumbiel Company. In a second narrative report dated August 23, 1988, Donovan stated that appellant could not return to work in the wash-up and bailer area, and that appellant's pulmonary condition would, in all likelihood, prevent him from ever returning to that employment position. Under these circumstances, the fact that appellant had been discharged from his former position of employment seems particularly irrelevant to the issue of wage loss eligibility. That is, since appellant is medically unable to return to his former position of employment, it should make absolutely no difference to the determination of wage loss eligibility that his former employment position is unavailable to him for some other (secondary) reason.

Accordingly, we hold that the fact that a claimant has been fired for a reason unrelated to an allowed condition has no bearing on a claimant's eligibility for wage loss compensation, where the medical evidence reveals that the claimant

could not have returned to his or her employment position regardless of the firing. Therefore, the commission abused its discretion in denying wage loss compensation on grounds that appellant had been fired from the Zumbiel Company.

The commission also denied appellant's motion for wage loss compensation based upon the medical evidence indicating that appellant's industrial bronchitis had resolved itself. In this regard, the commission apparently reasoned that because appellant no longer suffered the symptoms of industrial bronchitis, there could be no causal connection between appellant's occupational disease and his claimed wage loss. However, we find that the commission has misconstrued the nature of appellant's condition. So, too, did the court of appeals. Appellant's medical condition is unusual because it manifests itself only when he is exposed to caustic soda. As indicated in our discussion *supra*, the medical evidence cited and relied upon by the commission establishes that appellant's condition permanently prevents him from returning to his former position of employment with the Zumbiel Company because that job involves unacceptable risks of caustic soda exposure. As Dr. Donovan explained in his second narrative report dated August 23, 1988, and in a letter dated October 10, 1988, appellant is physically able to perform the tasks associated with his former position of employment, *but a return to the former employment position would, from a medical standpoint, create an unacceptable risk of a resurgence of the symptoms associated with appellant's occupational disease.* Thus, the medical evidence upon which the commission relied reveals that appellant's allowed condition prohibits a return to his former position of employment. Under these circumstances, if appellant has suffered wage losses as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with his physical capabilities, appellant would seemingly have a legitimate claim for wage loss compensation under the terms of R.C. 4123.56(B) and Ohio Adm.Code 4121–3–32(D)(1) and/or (3).

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and grant a limited writ of mandamus directing the commission to vacate its order denying wage loss compensation. We return the cause to the commission for further proceedings consistent with this opinion and for the issuance of a new order supported by some evidence.

*Judgment reversed*
*and limited writ issued.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.