[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 272.]

THE STATE EX REL. MCGONEGLE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. McGonegle v. Indus. Comm*., 1996-Ohio-162.]

*Workers' compensation—Fact that a claimant has been fired for a reason unrelated to an allowed condition has no bearing on claimant's eligibility for wage loss compensation, when.*

———————————

The fact that a claimant has been fired for a reason unrelated to an allowed condition has no bearing on a claimant's eligibility for wage loss compensation, where the medical evidence reveals that the claimant could not have returned to his or her employment position regardless of the firing.

———————————

(No. 94-1689—Submitted May 21, 1996—Decided August 7, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD03-441.

———————————

{¶ 1} Jeffrey McGonegle, appellant, began working for appellee C.W. Zumbiel Company (the "Zumbiel Company") in 1979. From September 1984 through October 1986, appellant worked in the wash-up and bailer area of the production plant. Appellant's job duties in this area required him to use a heated caustic soda solution to clean component parts of the company's printing press units. While working in the wash-up and bailer area, appellant began experiencing respiratory problems, including severe coughing attacks, attributable to his exposure to the caustic soda solution.

{¶ 2} On the morning of October 18, 1986, appellant went to a hospital emergency room for treatment of his coughing condition. Appellant had been scheduled to work that day and, thus, he called the Zumbiel Company from the

hospital to report his status to the employer. On October 20, 1986, appellant returned to work with a medical statement from the hospital. However, due to his October 18 absence from work, appellant was assigned a "point" under the Zumbiel Company policy governing excessive tardiness and absenteeism. Consequently, appellant was fired for allegedly violating company policy relating to punctuality and excessive absences. Thereafter, the Unemployment Compensation Board of Review awarded appellant unemployment compensation, finding that appellant had been discharged from his employment without just cause.

{¶ 3} On June 9, 1987, appellant was examined by Dr. Douglas H. Linz. In January 1988, Dr. Linz determined that appellant had contracted industrial bronchitis during the course of his former employment with the Zumbiel Company. In March 1988, appellant filed a workers' compensation claim for recognition of his occupational disease. The Industrial Commission of Ohio ("commission"), appellee, allowed appellant's claim for industrial bronchitis.

{¶ 4} On August 17, 1989, appellant moved the commission for an award of wage loss compensation. See R.C. 4123.56(B). Appellant sought to establish that his allowed condition prevented a return to his former position of employment, and that other work within his physical capabilities either paid less or was unavailable to him.[1] On November 15, 1991, a commission district hearing officer conducted a hearing on appellant's motion. The evidence before the hearing officer included (1) documentation concerning appellant's alleged wage losses, (2) an August 23, 1988 medical evaluation report prepared by Dr. James R. Donovan, Jr., a physician who had evaluated appellant on behalf of the Zumbiel Company, (3) a

---

1. Appellant apparently worked for a plumbing company for a period of time in 1988, for Guardsmark, Inc., from March 12, 1990 to August 9, 1990, and for the Wackenhut Corporation of Coral Gables, Florida, from October 1990 to November 1991. However, appellant claims that he made less money at these various jobs than he did at his former position of employment with the Zumbiel Company. Appellant also claims that he was unable to secure work consistent with his physical capabilities for other periods of time following his separation from the Zumbiel Company.

second narrative report prepared by Donovan on August 23, 1988, (4) a letter dated October 10, 1988 from Donovan to counsel for the Zumbiel Company concerning appellant's medical condition, and (5) office notes generated by Donovan from his examination of appellant. The evidence concerning appellant's medical condition may be summarized as follows.

{¶ 5} Dr. Donovan examined appellant on August 1, 1988. Donovan's office notes indicate that his clinical impression at the time of the examination was that appellant's industrial bronchitis had "resolved." On August 23, 1988, Donovan issued a medical evaluation report concerning appellant's pulmonary condition. In his report, Donovan stated:

"I have been asked to state whether Mr. McGonegle is suffering from industrial bronchitis. It is my opinion that with reasonable medical probability, Mr. McGonegle's symptomatology, the timing of his symptoms, the gradual resolution of his symptoms, and the occasion of his symptoms while working in the wash-up and bailer areas support a diagnosis of industrial bronchitis at the time Mr. McGonegle was working at Zumbiel Box. However, it is not my opinion that at this point in time, Mr. McGonegle is suffering from any residual pulmonary deficits, occasioned by that exposure.

"The etiology of Mr. McGonegle's industrial bronchitis was the caustic soda, or sodium hydroxide exposure that he was subjected to in the wash-up and bailer room. * * * There are people who are sensitive or susceptible to the effects of chemicals such as sodium hydroxide, at levels which are below the OSHA standards. I believe that Mr. McGonegle, given the evidence accumulated to this point, is one of those people. Thus, it would be expected that Mr. McGonegle would, regardless of the ventilation or airborne levels encountered in the wash-up and bailer room, have a recurrence or exaccerbation [*sic*] of his symptoms if he were to be reassigned to the wash-up and bailer area."

**{¶ 6}** On the same day, August 23, 1988, Dr. Donovan issued a second report concerning appellant's medical condition. In this report, Donovan stated:

"This second narrative report concerning the case of Mr. Jeff McGonegle, answers a number of questions. Question number one asked my opinion as to a reasonable degree of medical probability, whether any of his pulmonary conditions prevent him from returning to his former position of employment. It is my feeling that Mr. McGonegle is sensitive and does suffer some symtomatology [*sic*] when exposed to caustic soda. Thus, I do not feel that he could return to his former position of employment in the wash-up and bailer room. However, this does not preclude Mr. McGonegle's returning to employment at Zumbiel Box; it only precludes his returning to his employment in that particular area.

"Secondly, I've been asked to state whether or not his pulmonary conditions are permanent and if any permanent conditions would keep him from returning to that job permanently. Again, I feel that Mr. McGonegle is permanently unable to return to the job in the wash-up and bailer room as that job is currently constituted. It is remotely possible that with 100% effective ventilation, and the proper and efficient use of personal protective equipment, such as a respirator, face shields, gloves, and modification of the worksite, Mr. McGonegle would be able to return to that area. However, the best solution in a situation such as Mr. McGonegle's is to prohibit any exposure at all to caustic soda, mist, or vapors.

"I do not feel that there [are] any non-industrial conditions that contribute to his inability to return to work in that area, and I do not feel that this inability to return is an actual physical inability to perform the work. It is my belief that he should not return to work as a preventative measure, so as not to make his susceptibility to caustic soda worse, or occasion his redevelopment of industrial bronchitis. I do believe that he would be able to return to work at Zumbiel Box if certain work limitations were imposed.

4

"It does seem that Mr. McGonegle has reached maximum medical improvement for the conditions that he suffered while employed at Zumbiel Box. In terms of treatment measures that can be taken to improve his condition, I do not feel that he currently suffers any physical liabilities, and thus would not need any treatment."

{¶ 7} Subsequently, in a letter dated October 10, 1988, Dr. Donovan responded to questions posed by counsel for the Zumbiel Company concerning appellant's industrial bronchitis. In the letter, Donovan wrote:

"I am asked two questions regarding the industrial bronchitis: Question number one asked me to evaluate whether or not there is any indication that in June, 1987, during his initial examination [by Dr. Linz], Mr. McGonegle's industrial bronchitis was still active.

"The answer to this would seem to be no. Dr. Linz's report of June indicates that his only physical finding from a respiratory standpoint was a dry, non-productive cough. The remainder of the physical examination of the lungs was within normal limits. The patient's pulmonary function testing was within normal limits. The conclusion to be based from this is that the patient was not, at that point in time, still suffering from industrial bronchitis.

"Finally, the second question raised about the industrial bronchitis is regarding the permanency of his pulmonary conditions. It is my opinion that Mr. McGonegle's reaction to the caustic soda exposure is likely to be the same as in the past if he were to have subsequent exposures. * * * The type of reactivity exhibited by Mr. McGonegle is not a sensitization in the medical sense of the word, but rather a [*sic*] increased susceptibility or reactivity to the caustic soda; thus if the work conditions currently remain the same as when Mr. McGonegle was formerly employed at Zumbiel, it would be expected that he would once again have pulmonary symptoms if he were exposed to the caustic soda. However, as mentioned in my report of August 23, 1988, it is remotely possible that with 100%

effective ventilation in removing the vapors and mist from the work-site, and the proper and efficient use of personal protective equipment, * * * Mr. McGonegle would be able to return to that area. However, the best solution from a medical standpoint in this situation, is to prohibit any exposure to caustic soda mist or vapors."

{¶ 8} Following the November 15, 1991 hearing, the commission's district hearing officer denied appellant's motion for wage loss compensation, stating, in part:

"Claimant's C-86 motion filed 8/17/89 is denied. In coming to this conclusion District Hearing Officer makes the following findings: First, the claimant last worked for [the Zumbiel Company] on October 26, 1986 when his employment was terminated for excessive tardiness and absenteeism, and not as the result of the allowed conditions in the claim. Second, there is medical evidence in file from Dr. Donovan (reports dated 8/17/88, 8/23/88 & 10/10/88) which states that the claimant no longer suffers from the condition of Industrial Bronchitis or that the condition was not active in June of 1987.

"Dr. Donovan's 8/23/88 report also states that the claimant does not suffer any physical liabilities as a result of the industrial exposure and does not need any further treatment, as sell [*sic,* well] as the 8/1/88 office notes in file which also states [*sic*] that the claimant's bronchitis has resolved itself.

"Based on the above findings, the District Hearing Officer determines that any wage loss suffered by the claimant is not the direct result of the allowed conditions in the claim, as required by [R.C. 4123.56(B)]. Therefore, the claimant's motion for wage loss is denied."

{¶ 9} The district hearing officer's order was administratively affirmed.

{¶ 10} On March 31, 1993, appellant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had acted arbitrarily and unlawfully in denying his motion for wage loss compensation. In

6

the complaint, appellant sought the issuance of a writ of mandamus to compel the commission to award him wage loss compensation. The court of appeals denied the writ, finding that the medical evidence cited and relied upon by the commission supported the determination that any wage loss suffered by appellant was not a direct result of appellant's allowed condition.

{¶ 11} The cause is now before this court upon an appeal as of right.

_____

*Stewart Jaffy & Associates Co., L.P.A.*, *Stewart R. Jaffy* and *Marc J. Jaffy*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Jetta Mencer*, Assistant Attorney General, for appellee commission.

*Taft, Stettinius & Hollister* and *Charles M. Stephan*, for appellee Zumbiel Company.

_____

**DOUGLAS, J.**

{¶ 12} R.C. 4123.56(B) provides that:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

{¶ 13} Supplementing the statute, Ohio Adm.Code 4121-3-32(D) provides that:

"In injury claims in which the date of injury, or in occupational disease claims in which the date of disability, is on or after August 22, 1986, the payment of compensation or wage loss pursuant to division (B) of section 4123.56 of the

Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

{¶ 14} In *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202, 1204, this court recognized that "[a] claim for wage loss compensation has two components -- actual wage loss and causal relationship between the allowed condition and the wage loss." Thus, a claimant seeking wage loss compensation must establish the existence of a causal connection between the industrial injury and his or her actual wage losses.

{¶ 15} Here, the commission denied appellant's motion for wage loss compensation, finding that any wage loss suffered by appellant was not the direct result of his allowed condition for industrial bronchitis. Specifically, the commission concluded that there was no causal relationship between appellant's allowed condition and his actual lost wages because: (1) appellant had been discharged from his employment with the Zumbiel Company for excessive tardiness and absenteeism, and not as a result of his industrial injury, and (2) the medical evidence indicated that appellant's industrial bronchitis had resolved itself. However, we find that neither appellant's discharge from the Zumbiel Company nor the medical evidence cited and relied upon by the commission constitutes a valid basis for denying appellant's claim for wage loss compensation.

{¶ 16} In *Schottenstein*, *supra*, 68 Ohio St.3d at 123, 623 N.E.2d at 1205, this court held that "firing may, but does not automatically, bar wage loss

compensation under R.C. 4123.56(B)." In *Schottenstein*, we declined to extend the voluntary employment separation principles applicable in cases involving temporary total disability compensation to R.C. 4123.56(B) wage loss claims, stating: "We agree that firing can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * * We decline, however, to extend these voluntary abandonment principles to R.C. 4123.56(B) wage loss because wage loss is broader in scope than temporary total disability." *Schottenstein, supra*, 68 Ohio St.3d at 121, 623 N.E.2d at 1204. The upshot of our decision in *Schottenstein* is that firing is *not* a determinative factor to be considered in a wage loss claim. In this regard, *Schottenstein* is consistent with the provisions of R.C. 4123.56(B). Specifically, R.C. 4123.56(B) does *not* tie an injured worker's right to wage loss compensation to the continued possibility of future employment at the job where the injury occurred. Accord *State ex rel. Stevenson v. Indus. Comm.* (Sept. 30, 1992), Franklin App. No. 91AP-1152, unreported, 1992 WL 240417. Rather, the statute (and Ohio Adm.Code 4121-3-32[D]) clearly contemplates, that an injured worker may seek employment at his or her former place of employment *or may seek employment elsewhere* consistent with his or her physical capabilities.

{¶ 17} Moreover, the medical evidence in this case indicates that appellant could not have returned to his former position of employment at the Zumbiel Company *regardless of the firing*. In its order denying wage loss compensation, the commission cited and relied upon a series of medical examination reports prepared by Dr. James R. Donovan, Jr. In his first narrative report dated August 23, 1988, Donovan determined that appellant had developed industrial bronchitis while working in the wash-up and bailer area of the Zumbiel Company facility, and that the industrial bronchitis had been caused by appellant's exposure to caustic

soda. In this report, Donovan concluded that the symptomatology associated with appellant's industrial bronchitis had resolved itself, but that appellant could be expected to suffer a resurgence of the pulmonary symptoms if he ever returned to his former position of employment with the Zumbiel Company. In a second narrative report dated August 23, 1988, Donovan stated that appellant could not return to work in the wash-up and bailer area, and that appellant's pulmonary condition would, in all likelihood, prevent him from ever returning to that employment position. Under these circumstances, the fact that appellant had been discharged from his former position of employment seems particularly irrelevant to the issue of wage loss eligibility. That is, since appellant is medically unable to return to his former position of employment, it should make absolutely no difference to the determination of wage loss eligibility that his former employment position is unavailable to him for some other (secondary) reason.

{¶ 18} Accordingly, we hold that the fact that a claimant has been fired for a reason unrelated to an allowed condition has no bearing on a claimant's eligibility for wage loss compensation, where the medical evidence reveals that the claimant could not have returned to his or her employment position regardless of the firing. Therefore, the commission abused its discretion in denying wage loss compensation on grounds that appellant had been fired from the Zumbiel Company.

{¶ 19} The commission also denied appellant's motion for wage loss compensation based upon the medical evidence indicating that appellant's industrial bronchitis had resolved itself. In this regard, the commission apparently reasoned that because appellant no longer suffered the symptoms of industrial bronchitis, there could be no causal connection between appellant's occupational disease and his claimed wage loss. However, we find that the commission has misconstrued the nature of appellant's condition. So, too, did the court of appeals. Appellant's medical condition is unusual because it manifests itself only when he is exposed to caustic soda. As indicated in our discussion *supra*, the medical

evidence cited and relied upon by the commission establishes that appellant's condition permanently prevents him from returning to his former position of employment with the Zumbiel Company because that job involves unacceptable risks of caustic soda exposure. As Dr. Donovan explained in his second narrative report dated August 23, 1988, and in a letter dated October 10, 1988, appellant is physically able to perform the tasks associated with his former position of employment, *but a return to the former employment position would, from a medical standpoint, create an unacceptable risk of a resurgence of the symptoms associated with appellant's occupational disease*. Thus, the medical evidence upon which the commission relied reveals that appellant's allowed condition prohibits a return to his former position of employment. Under these circumstances, if appellant has suffered wage losses as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with his physical capabilities, appellant would seemingly have a legitimate claim for wage loss compensation under the terms of R.C. 4123.56(B) and Ohio Adm.Code 4121-3-32(D)(1) and/or (3).

{¶ 20} Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals and grant a limited writ of mandamus directing the commission to vacate its order denying wage loss compensation. We return the cause to the commission for further proceedings consistent with this opinion and for the issuance of a new order supported by some evidence.

*Judgment reversed*
*and limited writ issued.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

———————————