[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 25.]

THE STATE EX REL. MCCOY, APPELLANT, *v*. DEDICATED TRANSPORT, INC. ET AL., APPELLEES.

THE STATE EX REL. BRANDGARD, APPELLANT, *v*. INDUSTRIAL COMMISSION OF OHIO, APPELLEE, ET AL.

[Cite as *State ex rel. McCoy v. Dedicated Transport, Inc.*, 2002-Ohio-5305.]

*Workers' compensation—Denial of application for temporary total disability compensation by Industrial Commission affirmed—Circumstances under which a claimant who voluntarily abandons his or her former position of employment or is fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56.*

(Nos. 2001-0232 and 2001-0406—Submitted May 21, 2002—Decided October 16, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 00AP-127.

APPEAL from the Court of Appeals for Franklin County, No. 00AP-518.

————————————

SYLLABUS OF THE COURT

A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

————————————

**ALICE ROBIE RESNICK, J.**

{¶1} These two workers' compensation appeals have been consolidated for purposes of review because they arise from analogous facts and present a common legal issue.

*Case No. 2001-0232*

{¶2} On March 3, 1998, claimant-appellant, Lester McCoy, received an injury in the course of and arising from his employment as a truck driver with appellee Dedicated Transport, Inc. Dedicated Transport, a self-insuring employer under the Workers' Compensation Act, certified the claim for "contusion of left elbow; contusion of back lumbar." Claimant's treating physician released him to return to work on March 9, 1998. On March 13, 1998, claimant was fired for tardiness and insubordination.

{¶3} On April 14, 1999, a district hearing officer for appellee Industrial Commission of Ohio ("commission") additionally allowed the claim for "posterior central disc herniation, L5-S1" and authorized a lumbar laminectomy. Claimant underwent surgery on June 28, 1999, and then moved for temporary total disability ("TTD") compensation beginning on that date. The motion was ultimately denied by the commission because the claimant's discharge from his former position of employment on March 13, 1998, constituted a voluntary withdrawal from employment under *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469.

{¶4} After seeking and being denied a writ of mandamus in the court of appeals, claimant brought this appeal as of right.

*Case No. 2001-0406*

{¶5} On September 3, 1999, claimant-appellant, Bruce Brandgard, suffered a work-related hernia while employed by America's Body Company, Inc./Buckeye Truck Equipment, Inc., a state-fund employer. The following day, claimant was

given a drug test while he was at the hospital getting treatment for his injury. The drug test was positive for cocaine, and claimant was fired on September 10, 1999.

{¶6} On September 24, 1999, claimant underwent surgery to repair the hernia. He then moved for TTD compensation from that date until October 22, 1999, when he returned to work for a different employer. The commission, appellee herein, ultimately allowed the claim for the hernia but denied TTD compensation for the period of disability following claimant's surgery. In denying compensation, the commission found that claimant's discharge constituted a voluntary abandonment of his employment pursuant to *Louisiana-Pacific Corp.*

{¶7} The court of appeals denied claimant's request for a writ of mandamus, and this appeal followed as of right.

{¶8} In *Louisiana-Pacific Corp.*, 72 Ohio St.3d at 402-403, 650 N.E.2d 469, we recognized that a justifiable discharge for misconduct can constitute a voluntary abandonment of the claimant's former position of employment so as to bar subsequent TTD compensation. We found that, although not generally consented to or initiated by the employee, firing can take on a voluntary character when it is a consequence of wrongful or prohibited behavior that the claimant willingly undertook and should have expected to result in discharge. Thus, we characterized as voluntary "a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been known to the employee." Id., 72 Ohio St.3d at 403, 650 N.E.2d 469.

{¶9} The claimants herein concede that they were fired under circumstances that amount to a voluntary abandonment of their former positions of employment. Instead of challenging the commission's reliance on *Louisiana-Pacific Corp.* to characterize their departures as voluntary, these claimants question whether the voluntary abandonment rule operates, or should operate, as an automatic and

permanent bar to a claimant's eligibility for future TTD compensation. Their essential proposition is that a voluntary departure from a position of employment, whether by firing or otherwise, precludes eligibility for TTD compensation only when it breaks the causal connection between the claimant's industrial injury and the claimant's wage loss.

{¶10} These claimants differ, however, in their description of the circumstances under which a claimant is eligible for TTD compensation, despite having voluntarily left the job at which he or she was injured. Claimant Lester McCoy argues:

{¶11} "Although appellant's actions may have prevented payment for an initial period of temporary total [disability] because it was his job termination rather than his injury that prevented his return to work, once appellant did return to work (for another employer) and suffered a flare-up of his symptoms and hospitalization the impediment to receipt of temporary total disability compensation should be lifted because it is the injury that is preventing him from working and not the alleged insubordination and tardyness [sic] at his former place of employment."

{¶12} According to claimant Bruce Brandgard, however, the cause-and-effect relationship between a work-connected injury and TTD is conclusively broken only when the claimant voluntarily abandons the entire work force. Where the claimant abandons only his or her former job, however, eligibility for subsequent TTD compensation depends upon whether there are any other factors that contribute substantially to claimant's unemployment. Thus, Brandgard concludes, "While it is undisputed that the firing on September 10, 1999 caused the claimant to need to look for a replacement job as of September 11, 1999, issues remain as to whether that firing remained the one and only cause of his need for replacement wages as of the date of his surgery."

{¶13} In order to adequately address these issues, it is first necessary to trace the history and theoretical underpinnings of the voluntary abandonment rule.

As initially conceived, the voluntary abandonment rule rested on the presumption that eligibility for TTD compensation depended upon the claimant's continued employment at the job where the injury occurred. This view was rooted in *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus, where we held that "[u]nder R.C. 4123.56, temporary total disability is defined as a disability which *prevents* a worker from returning to his former position of employment." (Emphasis added.)

**{¶14}** Relying on this definition, the appellate court in *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 147, 29 OBR 162, 504 N.E.2d 451, declared that to be compensable, "the industrial injury must not only be such as to render the claimant unable to perform the functions of his former position of employment, but it also must prevent him from returning to that position." The court then reasoned as follows:

**{¶15}** "[O]ne who has voluntarily retired and has no intention of ever returning to his former position of employment is not prevented from returning to that former position by an industrial injury * * *. A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment. Such action would include such situations as the acceptance of another position, as well as voluntary retirement.

**{¶16}** "Accordingly, we * * * find that voluntary retirement may preclude a claimant from receiving temporary total disability benefits to which he otherwise might be entitled, if by such retirement the claimant has voluntarily removed

himself permanently from the work force." Id., 29 Ohio App.3d at 147, 29 OBR 162, 504 N.E.2d 451.

{¶17} In *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, this court adopted the rationale of *Jones & Laughlin* and applied the voluntary abandonment rule to a claimant's incarceration. The claimant in *Ashcraft* argued that, unlike the claimant in *Jones & Laughlin*, he had no intention of removing himself permanently from the job market. We found this distinction to be inconsequential, however, reasoning as follows:

{¶18} "The crux of this decision [*Jones & Laughlin*] was the court's recognition of the two-part test to determine whether an injury qualified for temporary total disability compensation. The first part of this test focuses upon the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position. The secondary consideration is a reflection of the underlying purpose of temporary total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals. * * * When a claimant has voluntarily removed himself from the work force, he no longer incurs a loss of earnings because he is no longer in a position to return to work. This logic would apply whether the claimant's abandonment of his position is temporary or permanent." *Ashcraft*, 34 Ohio St.3d at 44, 517 N.E.2d 533.

{¶19} In *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678, we adopted the rationale of *Ashcraft* and *Jones & Laughlin* but clarified that only voluntary abandonment bars TTD compensation. We held that "[w]hen a claimant's retirement is causally related to an industrial injury, the retirement is not 'voluntary' so as to preclude eligibility for temporary total disability compensation." Id. at syllabus. We explained that "[t]his broader focus takes into consideration a claimant's physical condition. It recognizes the inevitability that some claimants will never be medically able to return to their

former positions of employment, and thus dispenses with the necessity of a claimant's remaining on the company roster in order to maintain temporary total benefit eligibility." Id., 40 Ohio St.3d at 46, 531 N.E.2d 678.

{¶20} At this point, the nature or character of departure became the pivotal question in every case in which the claimant seeking TTD compensation was no longer employed at the job where the injury occurred. Thus, for over a decade following our decision in *Rockwell Internatl.*, the recurrent controversy in these cases involved the classification of various types of workplace departures as "voluntary" or "involuntary." Accordingly, our attention then focused exclusively on whether various methods of job termination, such as retirement, layoff, firing, incarceration, or resignation, might properly be characterized as voluntary so as to bar subsequent TTD compensation. See *State ex rel. Cobb v. Indus. Comm.* (2000), 88 Ohio St.3d 54, 723 N.E.2d 573; *State ex rel. Pretty Products, Inc. v. Indus. Comm.* (1996), 77 Ohio St.3d 5, 670 N.E.2d 466; *State ex rel. Smith v. Superior's Brand Meats, Inc.* (1996), 76 Ohio St.3d 408, 667 N.E.2d 1217; *Louisiana-Pacific Corp.*, 72 Ohio St.3d 401, 650 N.E.2d 469; *State ex rel. Sloman v. Indus. Comm.* (1994), 71 Ohio St.3d 192, 642 N.E.2d 1101; *State ex rel. McGraw v. Indus. Comm.* (1990), 56 Ohio St.3d 137, 564 N.E.2d 695; *State ex rel. Smith v. Indus. Comm.* (1990), 50 Ohio St.3d 45, 553 N.E.2d 247; *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.* (1989), 45 Ohio St.3d 381, 544 N.E.2d 677; *State ex rel. Scott v. Indus. Comm.* (1988), 40 Ohio St.3d 47, 531 N.E.2d 704.

{¶21} During this time, we also determined that a claimant's voluntary departure from the former position of employment will not automatically preclude eligibility for future permanent partial disability (former R.C. 4123.57[A], 137 Ohio Laws, Part II, 3934, 3946-3947), permanent total disability (R.C. 4123.58), or disability compensation under R.C. 4123.56(B) because, unlike TTD compensation, a claimant's eligibility for these forms of disability compensation is not tied to the continued prospect of employment at the job where the injury

occurred. See *State ex rel. McGonegle v. Indus. Comm.* (1996), 76 Ohio St.3d 272, 667 N.E.2d 392; *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138; *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 623 N.E.2d 1202; *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 623 N.E.2d 55; *State ex rel. CPC Group, Gen. Motors Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 209, 559 N.E.2d 1330.

{¶22} However, from 1985 (when *Jones & Laughlin* was decided) through February 2000 (when we decided *Cobb*), every case in which we held the voluntary abandonment rule applicable to bar TTD compensation involved a claimant who had not only abandoned the former position of employment, but who was also unemployed over the claimed period of disability for reasons unrelated to his or her industrial injury. Thus, we did not directly consider during this time whether the bar to eligibility would continue or be lifted if the claimant were to reenter the work force and again become temporarily disabled as a result of the original injury. In order to resolve this issue, we would need to reexamine the proposition that eligibility for TTD compensation depends generally upon whether the former position of employment would still be available to the claimant when his or her industrial injury stabilizes.

{¶23} We finally confronted this situation in *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355. In that case, the claimant, Paul W. Baker, received a work-connected injury on July 27, 1989, during his employment as a general laborer for his initial employer. Baker was paid TTD compensation from January 9, 1990 to July 15, 1990, when he was medically released to return to work. When Baker returned to work the following day, however, he signed a termination notice indicating that he had accepted other employment as a truck mechanic. Approximately two months later, while working for his new employer, Baker reaggravated his original injury and again became temporarily and totally disabled as of September 24, 1990. He then sought TTD

8

compensation for this subsequent period of disability, but the commission denied the request because Baker had voluntarily terminated his earlier employment. After the court of appeals denied his request for a writ of mandamus, Baker appealed to this court.

{¶24} In our initial decision in *State ex rel. Baker v. Indus. Comm.* (2000), 87 Ohio St.3d 561, 722 N.E.2d 67, we unanimously affirmed the judgment of the court of appeals, holding that Baker was not eligible for subsequent TTD compensation because he had voluntarily abandoned his former employer and had accepted new employment. Upon reconsideration, however, we unanimously vacated our prior decision and held:

{¶25} "When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job." *Baker*, 89 Ohio St.3d 376, 732 N.E.2d 355, syllabus.

{¶26} As the commission observes, this holding is limited to the situation where a claimant "leaves his or her former position of employment to accept another position of employment * * *." Id. at 384, 732 N.E.2d 355. We referred to this situation in *Baker* as "continued employment" and "maintaining [a] continued presence in the work force." Id. at 383, 732 N.E.2d 355. Moreover, the commission points out that there were certain policy considerations at play in *Baker* that do not apply where a claimant is fired after testing positive for cocaine or for otherwise violating the employer's written work rules. In *Baker*, we were dealing with a claimant who "made a decision to accept a new position that was more aligned with his background, training, and career interests," which sparked our concern that a contrary holding would "consign all workers to a particular

employment position and employer unless they are willing to abandon some earned benefits." Id. at 384, 732 N.E.2d 355.

{¶27} Thus, our holding in *Baker* is not directly applicable to the situation in which a claimant was justifiably fired from his or her former position of employment and then, after a period of unemployment, secured other work. Nevertheless, *Baker's* core rationale compels us to now extend its holding to encompass this situation.

{¶28} A careful review of our decision in *Baker* reveals that voluntary departure from the former position of employment will not automatically preclude a claimant's eligibility for TTD compensation later. Instead, a claimant who voluntarily left his or her former position of employment may still be eligible for TTD compensation if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at the new job.

{¶29} As originally conceived, the voluntary abandonment rule was premised on the "former position of employment" test as set forth in *Ramirez*, 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus. The test is derived from R.C. 4123.56, which provides that TTD compensation is not payable "when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment * * *."

{¶30} However, the following analysis in *Baker* eliminates the "former position of employment" test as a viable foundation for the voluntary abandonment rule:

{¶31} "R.C. 4123.56 is instructive in that it ties an injured worker's eligibility for TTD to the worker's capability of returning to his former position of employment. This 'former position of employment' standard was intended to be a threshold physical measurement of whether an injured worker was able to perform the duties of the job that he held at the time of injury. A worker's physical

capabilities are unrelated to whether the worker is actually working at his former position of employment and whether the former position is even available for the injured worker to return to after he is medically released.

{¶32} "In *State ex rel. Ramirez v. Indus. Comm.* * * * we held, 'Under R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment.' Quoting Webster's Third New International Dictionary (1961), this court stated that 'position' is defined as 'the group of tasks and responsibilities making up the duties of an employee.' *Id.* at 632, 23 O.O.3d at 519, 433 N.E.2d at 588. *Ramirez* did not hold that the injured worker had to actually return to the specific job that he held at the time of his injury; rather, this court merely stated that the proper criterion was the injured worker's ability to perform the job duties of his former position of employment. Since the Industrial Commission had failed to take evidence regarding Ramirez's ability to return, either partially or completely, to his former position of employment as a construction laborer, this court affirmed the court of appeals' judgment, which granted appellant a writ of mandamus and ordered the Industrial Commission to take evidence to determine Ramirez's ability to return to his former job. *Id.* at 634, 23 O.O.3d at 520, 433 N.E.2d at 590. As exemplified in *Ramirez*, the former-position-of-employment test does not involve any consideration of whether the injured worker returns to his actual job that he held at the time of his injury or whether that job is even available; rather, the test is a physical guideline by which an injured worker's eligibility for TTD is determined." *Baker*, 89 Ohio St.3d at 379-380, 732 N.E.2d 355.

{¶33} From a slightly different perspective, *Ramirez* simply clarified that "total disability" has a meaning in the context of TTD compensation different from what it has in the context of PTD compensation. Since both forms of compensation require that the disability be "total" in order to be compensable, the casual observer might assign similar meanings to the respective uses of the same term, concluding

that the only difference between these two disabilities is that one is "temporary" and the other "permanent." In establishing the "former position of employment" test for TTD claims, *Ramirez* was merely informing us that a standard exists for measuring "total disability" in TTD claims that differs from that used to measure "total disability" in PTD claims. *Ramirez*, 69 Ohio St.2d at 633-634, 23 O.O.3d 518, 433 N.E.2d 586. The test itself does no more than fix the demands of the former position as the standard by which to gauge the claimant's medical impairment in disability terms; it has absolutely nothing to do with conditioning eligibility for TTD compensation on the actual availability of the former position of employment.

{¶34} For these reasons, the "former position of employment" test as articulated in *Ramirez* and derived from R.C. 4123.56 does not serve as the basis for the voluntary abandonment rule. Instead, the justification for the voluntary abandonment rule emanates from a different source.

{¶35} All forms of death and disability benefits provided by R.C. Chapter 4123 are intended to compensate "for loss sustained on account of the injury." R.C. 4123.54(A). For purposes of compensability, a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate. We have stated repeatedly that "the purpose of temporary total disability benefits under R.C. 4123.56 is to compensate for loss of earnings * * *." *Ramirez*, 69 Ohio St.2d at 634, 23 O.O.3d 518, 433 N.E.2d 586. More specifically, TTD benefits are designed "to compensate an injured employee for the loss of earnings which he incurs while the injury heals." *Ashcraft*, 34 Ohio St.3d at 44, 517 N.E.2d 533. Thus, in order to qualify for TTD compensation, the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.

**{¶36}** In *Baker*, 89 Ohio St.3d at 384, 732 N.E.2d 355, we agreed with Judge Tyack's dissenting opinion in the court of appeals, which recognized that "'[a] complete abandonment of employment can, under certain circumstances, break the chain of cause and effect necessary to demonstrate that an injured worker actually is unemployed because of the injury.' " We also defined the circumstances under which this would occur by distinguishing several cases in which the voluntary abandonment rule was applied to preclude TTD compensation. Thus, we distinguished *McGraw*, 56 Ohio St.3d 137, 564 N.E.2d 695, where the claimant had quit his former position of employment for reasons unrelated to his industrial injury and years later, after working at and abandoning several other jobs, sought TTD compensation when he reinjured himself. In so doing, we explained, "McGraw was not working at the time of his [subsequent] injury; thus, he did not incur any loss of earnings at the time that he reaggravated his original industrial injury." *Baker*, 89 Ohio St.3d at 382, 732 N.E.2d 355.

**{¶37}** We also distinguished *Ashcraft*: "Since the incarcerated claimant would not be returning to work, he would not be experiencing a loss of earnings; hence, there was no *purpose* in awarding TTD [compensation]." (Emphasis sic.) Similarly, we distinguished *Jones & Laughlin*: "As in *Ashcraft*, there was also no *purpose* in awarding TTD [compensation] * * * because the claimant had voluntarily left the work force through his retirement, and * * * would not, therefore, experience a loss of earnings due to his industrial injury." (Emphasis sic.) *Baker,* 89 Ohio St.3d at 383, 732 N.E.2d 355.

**{¶38}** As *Baker* illustrates, the voluntary abandonment rule is potentially implicated whenever TTD compensation is requested by a claimant who is no longer employed in the position that he or she held when the injury occurred. But characterizing the claimant's departure from the former position of employment as "voluntary" does not automatically determine the claimant's eligibility for TTD compensation. Instead, voluntary departure from the former position can preclude

eligibility for TTD compensation only so long as it operates to sever the causal connection between the claimant's industrial injury and the claimant's actual wage loss. Voluntary departure does not sever this causal connection when the claimant reenters the work force and, due to his or her original industrial injury, again becomes temporarily and totally disabled while working at the new job. In this situation, the claimant's actual loss of earnings results from the industrial injury because the claimant would have been working but for the injury. Thus, an award of compensation in this situation would be consistent with the underlying purpose of TTD compensation, which is to provide the injured worker with a substitute for earnings that are lost while the injury heals.

{¶39} Accordingly, we hold that a claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

{¶40} It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities. In contrast, every case that we decided before *Baker* involved a claimant who had not only voluntarily abandoned the former employment, but who also had no job at the time of the subsequent period of disability. Thus, none of our prior decisions is affected by our holding today, and claimants in those situations will continue to be ineligible for TTD compensation.

{¶41} We now proceed to apply our holding to the facts presented in the instant cases. In case No. 2001-0232, claimant McCoy voluntarily abandoned his former position of employment at Dedicated Transport on March 13, 1998, by virtue of being justifiably fired. He sought TTD compensation beginning on January 26, 1999, the date he was allegedly diagnosed with a disc herniation, or

alternatively on June 28, 1999, the date of his surgery. However, there is no evidence in the record to suggest that McCoy was gainfully employed at these times or that he would have been employed if not for his industrial injury. To the contrary, the record reveals that McCoy's only employment from March 13, 1998, when he was fired, to June 28, 1999, when he underwent surgery, consisted of driving his cousin's truck on 12 to 15 separate days between February 3, 1999, and April 15, 1999 for $12 each day. Indeed, McCoy's attorney succinctly stated during a hearing held on October 29, 1999, before the commission's hearing officer that this "activity * * * did not constitute sustained gainful employment."

{¶42} Accordingly, McCoy is not eligible to receive TTD compensation for the periods in question.

{¶43} In case No. 2001-0406, claimant Brandgard voluntarily abandoned his former position of employment at America's Body Co. on September 10, 1999, when he was justifiably fired after testing positive for cocaine. He sought TTD compensation from September 24, 1999, the date he underwent surgery, to October 22, 1999, the date he returned to work for a different employer. However, there is no evidence in the record of this case to suggest that Brandgard was actually employed at his new job prior to September 24, 1999, or between September 24 and October 22, 1999.

{¶44} In a prescient analysis, the court of appeals' magistrate explained as follows:

{¶45} "[T]he magistrate recognizes that a persuasive argument may be made that claimant, when he used the illegal drug, risked only a short-term loss of wages—that he tacitly accepted only the loss of his ABC [America's Body Co.] wages until he could secure new employment. The magistrate recognizes that claimant secured new employment and that as a wage earner in his new job, he may possibly sustain a loss of wages if his allowed condition is aggravated and causes a new period of temporary total disability. In short, the magistrate acknowledges the

theory that, because claimant abandoned only his job at ABC and not the entire work force, he should not lose eligibility for all TTC in this claim for future losses of wages.

{¶46} "However, that issue is not before the court in the present action. Here, claimant sought TTC only for a closed period of about four weeks that occurred soon after the discharge and *before* be began his new job. The magistrate concludes that, if claimant were to experience a new period of temporary total disability following this resumption of wage-earning, that is, if he were to experience a loss of wages due to an exacerbation of his allowed condition, the issue of TTC for that period would be a new issue not yet addressed by the commission or this court." (Emphasis sic.)

{¶47} Accordingly, Brandgard is not eligible to receive TTD compensation for the period in question.

{¶48} For all of the reasons stated in this opinion, we hereby affirm the judgments of the court of appeals.

Judgments affirmed.

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

Larrimer & Larrimer and David H. Swanson, for appellant in case No. 2001-0232.

Dinsmore & Shohl, L.L.P., and Michael L. Squillace, for appellee Dedicated Transport, Inc., in case No. 2001-0232.

Betty D. Montgomery, Attorney General, and Dennis L. Hufstader, Assistant Attorney General, for appellee Industrial Commission in case No. 2001-0232.

Gregg A. Austin and Jeffrey A. Kolt, for appellant in case No. 2001-0406.

Betty D. Montgomery, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee in case No. 2001-0406.

_____