{¶ 1} Relator, Tracy Burt-McClatchey, filed an original action in mandamus in this court requesting that we order the respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation due to relator's termination from her employment, and ordering the commission to find that her termination from employment does not constitute grounds for denying the payment of future TTD compensation where there is no proof that the employee had voluntarily and permanently abandoned the entire workforce. The action was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 12(M)(1). The magistrate has submitted her report containing findings of fact and conclusions of law with the recommendation that we deny relator's request for a writ of mandamus. (Attached as Exhibit A.)
{¶ 2} Relator has submitted the following objections to the magistrate's conclusions of law and recommended denial of the writ of mandamus. Those objections are as follows: (1) "[t]he magistrate erred in concluding that State ex rel. Louisiana-Pacific v. Indus. Comm. (1995),72 Ohio St.3d 401 is controlling in the case at bar" (2) "[t]he magistrate erred in concluding that State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376 is not applicable to the case at bar."
{¶ 3} There are no objections to the magistrate's findings of fact. Those findings fully establish that relator was fired under circumstances that amount to a voluntary abandonment of her former position because she was terminated from that position on August 3, 2001, due to her violation of a work-rule policy. However, that finding, as clearly explained in the case of State ex rel. McCoy v. Dedicated Transport, Inc. (2002), 97 Ohio St.3d 25, does not end the inquiry. In State ex rel. McCoy, the syllabus of the case reads as follows:
{¶ 4} "A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56
if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job."
{¶ 5} In the case at hand, relator sustained a work-related injury on July 20, 2001 while still working for her former employer, Flower Memorial Hospital. The claim was allowed for contusion coccyx; sprain of left ankle and later allowed for the following additional conditions: "[c]ontusion right arm; neck sprain/strain; thoracic sprain/strain; lumbar sprain/strain; and sacrum sprain/strain."
{¶ 6} At the commission and before the magistrate, the entire issue that was litigated was whether a "voluntary abandonment of relator's former position" that resulted in her being fired prevented her from ever receiving TTD compensation even if the TTD which is sought prevented her from working in a subsequently obtained job. There is nothing in the record that supports the fact that claimant obtained another job after leaving the hospital's employment on August 3, 2001 but, rather, that her TTD should be allowable even though she had not obtained another position of employment.
{¶ 7} As made clear by the supreme court in State ex rel. McCoy, supra, in order to obtain TTD compensation after voluntary abandonment of a former position, the employee must first reenter the workforce and, due to the original industrial injury, become temporarily and totally disabled while working at her new job as a result of the injury during the abandoned employment. On page 35 of the McCoy opinion, supra, the supreme court stated "[i]t is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities. In contrast, every case that we decided before Baker involved a claimant who had not only voluntarily abandoned the former employment, but who also had no job at the time of the subsequent period of disability. Thus, none of our prior decisions is affected by our holding today, and claimant's in those situations will continue to be ineligible for TTD compensation."
{¶ 8} Thus, even though in certain respects, State ex rel. McCoy, supra, has limited or explained State ex rel. Louisiana-Pacific v. Indus. Comm. (1995), 72 Ohio St.3d 401, and State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, the limitations or changes do not assist relator because relator still is barred by a lack of causal connection because she had not obtained new employment before the alleged TTD for which she seeks compensation occurred.
{¶ 9} The objections of relator are overruled for the reasons set forth by the magistrate as supplemented by our application of the recent supreme court holding in State ex rel. McCoy, supra.
 {¶ 10} The writ of mandamus is denied.
Objections overruled; writ denied.
KLATT and BOWMAN, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 DECISION IN MANDAMUS
Relator, Tracy Burt-McClatchey, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation due to relator's termination from her employment and ordering the commission to find that an employee's termination from employment does not constitute grounds for denying the payment of future TTD compensation where there is no proof that the employee had voluntarily and permanently abandoned the entire workforce.
Findings of Fact:
1. Relator began working for respondent-employer, Flower Memorial Hospital ("employer") on July 2, 2001, and sustained a work-related injury on July 20, 2001. Her claim was originally allowed for: "Contusion coccyx; sprain of left ankle." Upon motion of relator, her claim was later additionally allowed for the following conditions: "Contusion right arm; neck sprain/strain; thoracic sprain/strain; lumbar sprain/strain; and sacrum sprain/strain."
2. On October 25, 2001, relator filed a motion requesting among other things, that TTD compensation be paid from August 3, 2001 forward. Relator's motion was supported by the October 24, 2001 report of Dr. Stephen T. Pierzchala.
3. The employer challenged relator's entitlement to TTD compensation asserting that relator had been terminated from her employment with the employer as a result of her violation of a written work rule regarding attendance. Specifically, the employer introduced evidence indicating that relator was within the 90 day introductory period of employment with the employer and that relator had been informed regarding the following attendance requirements:
"Attendance During The Introductory Period[.] It is the expectation of a new or reemployed employee that he or she will have perfect attendance during the introductory period. (1) An employee is allowed to miss one (1) scheduled work day or be late one (1) time during the introductory period. (2) Upon missing two (2) scheduled work days or being late two (2) times, the new or reemployed employee is subject to termination."
The employer indicated that relator was hired on July 2, 2001, and was scheduled to work from 8:00 a.m. to 4:30 p.m. However, on the first day, relator left work at 1:00 p.m. Her supervisor explained to her that this would be counted as an unscheduled absence because she was missing more than 25 percent of her shift. On July 6, 2001, relator asked to change work shifts and her supervisor agreed. Relator was scheduled to work on Sunday, July 15, 2001; however, she called and informed the employer that she could not work on Sundays and that she would not come into work that night. The employer counted this as her second unscheduled absence. On July 18, 2001, relator informed her employer that she wanted to go back to the morning shift. On July 19, 2001, relator telephoned the employer informing them that she was having a miscarriage and would not be able to work until Sunday, July 22, 2001. This was noted as her third unscheduled absence. On July 20, 2001, the decision was made to terminate relator's employment, and a message was left for her at home informing her to call her supervisor. Although she was not scheduled to work, relator reported to work on July 20, 2001 and sustained her injury. On July 22, 2001, relator did not report to work. Relator informed the employer that she had an excuse from the emergency room to be off work; however, relator never provided the employer with this written excuse. On July 23, 2001, relator called into work and was told to go to EmergiCare if she was still having problems; however, relator did not do so. Relator did not report for work on July 24, 25 or 26, 2001. A meeting was scheduled for relator for August 30, 2001; however, relator failed to attend. By letter dated August 3, 2001, relator was informed that her employment was being terminated because of her failures to report for work.
4. Relator's application for TTD compensation was heard before a district hearing officer ("DHO") on December 27, 2001, and resulted in an order granting her a closed period of TTD compensation from August 3, 2001 to December 27, 2001.
5. Both relator and the employer appealed and the matter was heard before a staff hearing officer ("SHO") on February 20, 2002. The SHO denied relator's request for TTD compensation as follows:
"It is the finding of this Staff Hearing Officer that the claimant was terminated on 08/03/2001, due to her violation of a written work rule/policy that: (1) clearly defined prohibited conduct, (2) had been previously identified by employer as dischargeable offense, and (3) was known or should have been known to employee.
"The employer had a written attendance policy that an employee is only allowed to miss one (1) scheduled workday or be late one (1) time during the `introductory' probationary period. Upon missing two (2) days or being late two (2) times, the employee is subject to termination.
"Claimant was hired on 07/02/2001, but left 3 1/2 hours early that day. Claimant called on Sunday, 07/15/2001, and said that she `couldn't work Sundays' and she did notshow up for work. Claimant didn't show up for work on Monday 07/23/2001 or Saturday 07/28/2001 and did not call in to report her absence on either day.
"The claimant had been warned by her supervisor, on 07/02/2001 and 07/19/2001, about the employer's written attendance policy and that violation could result in termination. Therefore, the 3 prongs of the Louisiana-Pacific case had been met. Therefore, the claimant was barred from receiving temporary total disability compensation on or after the date of her termination on 08/02/2001, which constituted a `voluntary abandonment' of employment, pursuant to the Ohio Supreme Court's holding in the case of State ex rel. Louisiana-Pacific Corp. v. Industrial Commission (Ohio 1995) 72 Ohio St.3d 401, 650 N.E.2d 469.
"Therefore, it is the order of this Staff Hearing Officer that claimant's request for temporary total disability compensation, from 08/03/2001 through 02/20/2002, is hereby DENIED."
6. Relator's further appeal was refused by order of the commission mailed March 28, 2002.
7. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
The only challenge which relator makes to the commission's order denying her application for TTD compensation is that her termination from her employment does not preclude her from receiving TTD compensation for a subsequent period of temporary total disability directly and proximately caused by her work-related injury in the absence of the failure of the employer to establish that relator had voluntarily removed herself permanently from the entire workforce. Stated another way, relator contends that the Ohio Supreme Court has redefined the standard for awarding TTD compensation so that the focus of the commission and the courts is no longer on the conduct of the employee, but is exclusively on whether or not the employee is disabled as a result of the allowed conditions.
Recently, this court considered and addressed this issue in Hammer v. Indus. Comm., Franklin App. No. 01AP-1315, 2002-Ohio-4294. In Hammer, the claimant had sustained a work-related injury, and then was subsequently terminated from his employment for violating a written work rule. The commission had denied claimant's request for TTD compensation in reliance on Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401. In mandamus, claimant had argued that in the cases which followed State ex rel. Baker v. Indus. Comm. (Aug. 9, 2000), 89 Ohio St.3d 376, the Ohio Supreme Court had overruled Louisiana-Pacific and that a claimant who is fired for violating a written work rule could now be awarded TTD compensation provided the claimant could show that they are now disabled from working based on the allowed conditions as long as the claimant had not abandoned the entire workforce.
In Hammer, this court specifically rejected that argument. Louisiana-Pacific has not been overruled. This court's decision in Hammer is binding on the action before this magistrate and is dispositive of the issue raised by relator herein. Relator also argues that Louisiana-Pacific really stands for the proposition that a termination for violating a written work rule shall be treated the same as a voluntary abandonment. Because the Ohio Supreme Court is now permitting the payment of TTD compensation in certain circumstances when an employee leaves one job and takes another, relator contends that logic dictates that the same be done when an employee is terminated. However, this argument ignores the fact that the Ohio Supreme Court is still applying the rational from Louisiana-Pacific to deny the receipt of TTD compensation to a claimant terminated from their employment provided that certain conditions are met. See State ex rel. McKnabb v. Indus. Comm. (2001), 92 Ohio St.3d 559 and State ex rel. Kitts v. Mancan, Inc. (2002), 94 Ohio St.3d 245. Those conditions were met here. As such, based upon this court's holding in Hammer, relator has not demonstrated that the commission abused its discretion.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her request for temporary total disability compensation and this court should deny relator's request for a writ of mandamus.