OPINION
{¶ 1} Relator, Estes Express Lines, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") *Page 2 
compensation to respondent Jason Chasteen ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision, including findings of fact and conclusions of law, which is appended to this opinion. Therein, the magistrate concluded the commission did not abuse its discretion in finding that claimant was eligible to receive TTD compensation following his November 6, 2006 surgery. Therefore, the magistrate recommended that this court deny the requested writ of mandamus.
 {¶ 3} Relator has filed the following two objections to the magistrate's decision:
 I. The Magistrate erred in failing to apply the correct legal standard in determining entitlement to temporary total disability compensation after a finding of voluntary abandonment of employment.
 II. The Magistrate erred in relying upon the SHO order issued September 7, 2007, which was later vacated by the Industrial Commission, to find some evidence of claimant's intent to continue to be employed.
 {¶ 4} Before discussing the presented objections, we first address the commission's motion for reconsideration and motion to strike relator's reply brief. On January 20, 2009, relator filed a motion for leave to file a reply memorandum. Said request was granted by this court on January 26, 2009. On February 11, 2009, the commission filed a motion for reconsideration with respect to our January 26, 2009 entry and a motion to strike relator's reply memorandum contending there is no provision that allows an objecting party to file a reply or additional response to a memorandum contra. *Page 3 
Further, the commission argues this court has consistently stricken such reply briefs in prior matters.
 {¶ 5} In the matter before us, unlike the cases relied upon by the commission, relator sought, and was granted, leave to file the reply at issue. We find no reason to vacate our order granting leave to file the reply simply because this court has stricken unauthorized filings in prior cases. Accordingly, the commission's motion for reconsideration and motion to strike are denied.
 {¶ 6} We now turn to relator's objections as this cause is before the court for a full review. No objections have been made to the magistrate's findings of fact. Upon an independent review of said findings of fact, we adopt them as our own, with the following addition. In the November 10, 2007 order of the commission, in addition to granting relator's motion for reconsideration, the commission also vacated the order of the staff hearing officer ("SHO") issued on September 29, 2007.
 {¶ 7} For ease of discussion, however, a brief recitation of the facts is appropriate at this juncture. Claimant sustained a work-related injury on August 2, 2005. Claimant was terminated from employment on August 8, 2005 for supplying false information regarding his medical treatment. Claimant sought TTD, but on March 2, 2006, a district hearing officer ("DHO") denied claimant's request based upon claimant's voluntary abandonment of his employment, i.e., he was fired for violating an employment policy. Further, appeals to the SHO were denied.
 {¶ 8} Claimant subsequently reentered the workforce in August 2006 as a golf ranger at Belterra Casino Resort and Spa ("Belterra"), and was laid off from this position on November 3, 2006. Also on November 3, 2006, relator saw Bradley Skidmore, M.D., *Page 4 
and had a microscopic lumbar laminotomy, disectomy, L5-S1 left, and exploration and removal of lamine L3-L4. Claimant sought TTD from November 6, 2006 to an estimated return-to-work date of January 1, 2007 and continuing. A DHO granted claimant's request, as did the SHO, from November 6, 2006 through May 6, 2007, the date on which claimant's physician found he had reached maximum medical improvement ("MMI"). The commission thereafter vacated the SHO's order, but nonetheless granted TTD compensation from November 6, 2006 to May 6, 2007.
 {¶ 9} Specifically, the commission found that because claimant reentered the workforce, he became eligible for TTD. Further, because claimant's layoff did not constitute voluntary abandonment of employment, the commission found claimant was entitled to the requested TTD compensation.
 {¶ 10} In its first objection, relator argues the magistrate's focus on claimant's intent is misplaced, and the proper legal analysis is that set forth in State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305, and its progeny. According to relator, claimant's seasonal employment ended on November 3, 2006, when he was laid off, and he was not disabled until November 6, 2006, the day he underwent a surgical procedure for the industrial injury sustained while working for relator. Because relator asserts claimant was not gainfully employed at the time he became disabled, i.e., November 6, 2006, relator argues he is not entitled to TTD.
 {¶ 11} In McCoy, the Supreme Court of Ohio held:
 A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters *Page 5 
the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
Id. at syllabus.
 {¶ 12} As set forth in McCoy, "this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities." Id. at ¶ 40. So the issue before us is whether the layoff from Belterra rendered claimant no longer gainfully employed such that TTD compensation would be precluded. We find that pursuant to State exrel. B.O.C. Group v. Indus. Comm. (1991), 58 Ohio St.3d 199, the layoff here did not preclude claimant from receiving TTD.
 {¶ 13} In B.O.C. Group, the claimant sustained an industrial injury in August 1981, and filed an application for workers' compensation. Claimant continued to work for B.O.C. Group until she was laid off with no possibility of being recalled on October 13, 1981. In February 1986, claimant requested TTD for two separate periods: March 5 to September 30, 1984 and July 11 to July 28, 1985. Said request was granted. Thereafter, in November 1986, claimant sought TTD from July 30, 1985 to present, and again the commission allowed her claim from July 30, 1985 to April 10, 1987.
 {¶ 14} On appeal to this court, relator argued claimant was not entitled to TTD because she was laid off from her employment. This court concluded, "the decision to lay off claimant was one initiated solely by the employer and over which the claimant had no control. Therefore, the fact that claimant was laid off does not preclude her from receiving temporary total disability compensation." State ex rel. B.O.C. Group v.Indus. Comm. (Sept. 21, 1989), 10th Dist. No. 88AP-983. *Page 6 
 {¶ 15} On appeal to the Supreme Court of Ohio, B.O.C. Group argued TTD compensation was improper because the claimant's departure from employment was not injury-related. The court stated such assertion was "incorrect" and that "an employer-initiated departure is still considered involuntary as a general rule." B.O.C. Group,58 Ohio St.3d 199, 202. The court went on to state, "[t]he lack of a causal connection between termination and injury has no bearing where the employer has laid off the claimant." Id.
 {¶ 16} Under B.O.C. Group, claimant's layoff here would not preclude his receipt of TTD compensation. If claimant had voluntarily abandoned his employment with Belterra after reentering the workforce and becoming eligible for TTD, then a different outcome may result. However, such is not the case before us. Claimant's eligibility for TTD underMcCoy was resurrected when he reentered the workforce, and underB.O.C. Group, the layoff did not bar such eligibility for TTD compensation.
 {¶ 17} Similarly, in State ex rel. The Andersons v. Indus. Comm.
(1992), 64 Ohio St.3d 539, the Supreme Court of Ohio stated the following:
 The requisite causal connection in temporary total disability cases, can, under certain circumstances, be broken when an employment relationship ends. Voluntary departure, for example, severs the causation chain. "Involuntary" departure does not. [State ex rel.] Ashcraft [ v. Indus. Comm. (1987), 34 Ohio St.3d 42]; State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44.
 An injury-induced departure is always considered involuntary. Rockwell. The character of other departures, however, can depend on many factors. Layoff is often considered involuntary since it is initiated by the employer, not the employee. State ex rel. B.O.C. Group, supra. In this case, claimant's departure was initiated by the employer, without evidence of any intent on claimant's part to abandon *Page 7 
employment. Appellant nonetheless in effect urges us to find that the departure was voluntary, since claimant accepted employment knowing that he would be released at season's end. Appellant's position, however, conflicts with our policy of encouraging gainful employment. See, e.g., State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, and State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381. Its argument ignores the possibility that claimant took the temporary position with The Andersons because it was the only job he could find. For this reason, we reject appellant's argument and find that claimant's layoff does not bar wage loss compensation in this instance.
Id. at 542.
 {¶ 18} Accordingly, relator's first objection is overruled.
 {¶ 19} In its second objection, relator contends the magistrate's reliance on the September 7, 2007 SHO order was misplaced because this order was vacated by the commission on November 10, 2007. While indeed reliance on a vacated order is misplaced, such does not alter the result of this case. The commission's order of January 24, 2008, stated the following:
 According to the Injured Worker's testimony at today's hearing, he would have continued to work at Belterra but for his impending back surgery. The Injured Worker did not quit nor was he terminated from his employment, but instead he was "laid off" by Belterra. Finally, the Commission is persuaded by the Injured Worker's testimony that his layoff was planned to coincide with his surgery.
 {¶ 20} Because the record contains some evidence to support the commission's findings, there has not been an abuse of discretion, and relator's second objection is overruled.
 {¶ 21} For the foregoing reasons, the commission's motion for reconsideration and motion to strike are denied, and relator's objections to the magistrate's decision are *Page 8 
overruled. We adopt the magistrate's findings of fact with the addition stated in this opinion, and adopt the magistrate's conclusions of law, with the exception of the reliance on the SHO's September 7, 2007 order. Consequently, we deny the requested writ of mandamus.
Motions denied; objections overruled; writ denied.
SADLER and TYACK, JJ., concur. *Page 9 
 APPENDIX MAGISTRATE'S DECISION {¶ 22} Relator, Estes Express Lines, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") *Page 10 
compensation to respondent Jason Chasteen ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact: {¶ 23} 1. On August 2, 2005, claimant was loading boxes weighing approximately 100 pounds each onto a skid in a trailer and experienced lower back pain. Claimant finished his shift and went home.
 {¶ 24} 2. Claimant returned to work the next day, August 3, 2005, and experienced low back pain.
 {¶ 25} 3. Claimant left work to seek medical attention.
 {¶ 26} 4. Claimant was seen by James Keller, M.D., who diagnosed claimant as having a lumbar sprain. While Dr. Keller thought it unlikely, he indicated that claimant may have a herniated disc which resolves 95 percent of the time with physical therapy alone. Dr. Keller prescribed Naprosyn and Robaxin to claimant and cautioned him not to drive within six hours of taking the muscle relaxer. Dr. Keller indicated that claimant could return to work with the following restrictions: no lifting more than 15 pounds, no pushing/pulling more than 30 pounds, minimal stooping, bending, crouching, twisting or squatting. Claimant was to return in five days.
 {¶ 27} 5. Claimant did not return to work that day. When questioned, claimant submitted a note indicating that the doctor had give him a shot which had "drug[ged] me up" and, as a result, he could not drive and called someone to take him home.
 {¶ 28} 6. On August 8, 2005, claimant was terminated for supplying false information regarding his medical treatment. Specifically, claimant has admitted that he *Page 11 
lied. Although Dr. Keller did give him a muscle relaxer which he may have taken, Dr. Keller did not give him a shot which rendered him unable to drive.
 {¶ 29} 7. Claimant submitted an FROI (First Report of an Injury) and relator rejected the claim on grounds that relator questioned whether the incident was related to claimant's employment.
 {¶ 30} 8. Claimant continued to see Dr. Keller and was later diagnosed with herniated disc at L5-S1 and lumbar sprain.
 {¶ 31} 9. On March 2, 2006, a district hearing officer ("DHO") held a hearing regarding the contested allowance of claimant's claim. The DHO determined that claimant did sustain a work-related injury during the course of his employment with relator and his claim should be allowed for "herniated disc at L5-S1 and lumbar sprain." Regarding the possible payment of TTD compensation, the DHO stated:
 The District Hearing Officer finds that the injured worker may be entitled to temporary total disability for a short period but that after 08/08/2005 he voluntarily abandoned his job by lying about medical treatment to his employer on the issue of returning to work. Therefore based upon the evidence of injured worker's termination due to a work policy/code of conduct which the injured worker was aware of voluntary abandoned his job as of 08/08/2005 when he was terminated.
 {¶ 32} 10. Both relator and claimant appealed.
 {¶ 33} 11. The appeals were heard before a staff hearing officer ("SHO") on July 21, 2006. Both appeals were denied. Specifically, the SHO agreed with the DHO's finding that claimant's claim should be allowed for lumbar sprain and herniated disc at L5-S1. Thereafter, the SHO addressed the issue of TTD compensation and found that claimant had violated a written work rule that clearly defined the prohibited conduct, was *Page 12 
previously identified by relator as a dischargeable offense, and was known to claimant. Specifically, the SHO found that claimant had submitted a written statement indicating that he did not return to work on August 3, 2005 because he had received a shot from his attending physician which rendered him incapable of returning to work. Claimant admitted at the hearing that he did not receive a shot. The SHO found that claimant's conduct violated relator's rules and indicated that an injured worker would be subject to termination for falsifying a medical record.
 {¶ 34} 12. Claimant subsequently reentered the workforce in August 2006 as a golf ranger at Belterra Casino Resort Spa ("Belterra Casino"). Claimant was laid-off from this position on November 3, 2006.
 {¶ 35} 13. Claimant saw Bradbury Skidmore, M.D., on November 3, 2006 and Dr. Skidmore's office notes indicate:
 * * * The patient was re-evaluated in the office today. He continues to have a combination of low back pain, left flank and left leg radicular pain with numbness running down the back of the left leg, numbness in the left lateral calf and a positive straight leg raise test on the left and negative on the right. He just finished a job for the season out at one of the casinos working on the golf course. He does complain of a large lump on the left lower back and left flank which feels like a large lipoma. This is slightly tender but he could certainly have underlying muscle tenderness from spasms in this area. He understands the risks of surgery which include but are not inclusive of anesthetic risks, infection, bleeding, nerve root injury, spinal fluid leakage, bowel, bladder and sexual dysfunction, continued back, hip and leg pain, paraesthesias or weakness, need for additional surgery, failure to relieve symptoms and recurrent lumbar disk herniation. He wishes to proceed and we are in the process of making these arrangements. *Page 13 
 {¶ 36} 14. Dr. Skidmore's November 3, 2006 office note bears striking similarity to his April 19, 2006 office note wherein he stated the following:
 * * * He continues to have left leg pain and takes about #1 Vicodin in the evening to sleep and rest at night. He is not able to work at this time. He has pain and paraesthesias that run down the leg and he complains of a knot on his back. He has a positive straight leg raise testing on the left and negative on the right. He has absent knee and ankle reflexes. He is able to stand on his toes, his heels and do a partial deep knee bend without much difficulty. He has restricted range of motion in his back. * * *
 At the present time, I have re-examined the films and also reviewed them with Mr. Chasteen. His radiographs from Health South Montgomery of September 14, 2005 reveal a large left paracentral disc herniation at L5-S1 severely compressing the exiting left S1 root. I believe he should undergo a microscopic lumbar laminotomy and discectomy at L5-S1 in hopes of trying to relieve his left leg radiculopathy. The risks of surgery were discussed with the patient to include but are not inclusive of anesthestic risks, infection, bleeding, nerve root injury, spinal fluid leakage, bowel, bladder and sexual dysfunction, continued back, hip and leg pain, paraesthesias or weakness, need for additional surgery, failure to relieve symptoms and recurrent lumbar disc herniation. He wishes to proceed with surgery and we are in the process of trying to make these arrangements for him.
 {¶ 37} 15. Claimant did not have the recommended surgery soon after his April 19, 2006 visit to Dr. Skidmore. However, claimant had surgery three days after his November 3, 2006 office visit with Dr. Skidmore. On that date, claimant had a microscopic lumbar laminotomy, discectomy, L5-S1 left, and exploration and removal of lamina, L3-L4. *Page 14 
 {¶ 38} 16. On December 28, 2006, claimant filed a C-86 motion requesting TTD compensation from November 6, 2006 through an estimated return-to-work date of January 1, 2007 and continuing.
 {¶ 39} 17. Claimant's request for TTD compensation was heard before a DHO on February 28, 2007 and was granted. After noting that claimant had voluntarily abandoned his employment with relator, the DHO found that claimant had returned to work in August 2006 and, as such, was eligible to receive TTD compensation.
 {¶ 40} 18. Relator appealed and the matter was heard before an SHO on September 4, 2007. The SHO granted claimant TTD compensation from November 6, 2006 through May 6, 2007, the date claimant's treating physician found that he had reached maximum medical improvement. With regards to relator's argument that claimant had voluntarily abandoned his employment, the SHO found as follows:
 The Staff Hearing Officer finds that by Industrial Commission order dated 07/21/2006 the injured worker was found to have voluntarily abandoned his employment. Therefore the payment of temporary total disability compensation was denied at that time. The Staff Hearing Officer further finds, however, that in August of 2006 the injured worker returned to work for a different employer. The injured worker testified at the hearing that he continued to work for the employer until 11/03/2006 when he took a voluntary layoff prior to his surgery. The Staff Hearing Officer finds that this voluntary layoff which occurred three days prior to previously scheduled surgery is not abandonment of employment. The Staff Hearing Officer further finds that this voluntary layoff does not constitute a period of unemployment unrelated to the recognized industrial injury which would preclude the payment of temporary total disability compensation pursuant to the decisions in State ex rel. Eckerly v. Industrial Commission of Ohio [105 Ohio St.3d 428, 2005-Ohio-2587] and State ex rel. McCoy v. Dedicated Transport, Inc. [97 Ohio St.3d 25, 2002-Ohio-5305]. *Page 15 
 The Staff Hearing Officer finds that as a result of the allowed conditions in this claim the injured worker was not able to return to and perform the duties of his former position of employment from 11/06/2006 through 05/06/2007. Therefore temporary total disability compensation is to be paid to the injured worker for said period less any sickness and accident benefits or wages that the injured worker may have received for the same period of time.
 {¶ 41} 19. Relator's appeal was refused by order of the commission mailed September 29, 2007.
 {¶ 42} 20. Thereafter, relator requested that the commission reconsider its September 29, 2007 order refusing to hear its appeal.
 {¶ 43} 21. In an order mailed November 10, 2007, the commission accepted relator's request for reconsideration and set the matter for hearing.
 {¶ 44} 22. The hearing before the commission was held December 4, 2007. The commission found that relator had met its burden of proving the presence of a clear mistake of law; specifically, the SHO improperly identified claimant's layoff at Belterra Casino as voluntary in nature. However, the commission ultimately granted claimant TTD compensation from November 6, 2006 through May 6, 2007. The commission explained:
 Pursuant to the Staff Hearing Officer order issued 07/29/2006, the Injured Worker was found to have voluntarily abandoned his former position of employment as a loading dock worker for violation of a written work rule. Thus, the payment of temporary total disability compensation was denied at that time. The Commission now finds, however, that the Injured Worker returned to work for a different employer, Belterra Casino, in August of 2006. Therefore, pursuant to State ex rel. Baker v. Industrial Commission (2000), 89 Ohio St.3d 376, also know[n] as "Baker II," the Injured Worker is entitled to temporary total disability compensation should he be disabled from work at Belterra Casino due to the allowed injury. *Page 16 
 The Commission finds that the Injured Worker last worked for Belterra Casino on 11/03/2006. He underwent a laminectomy for the allowed conditions in this claim on 11/06/2006, and was subsequently off work due to the allowed conditions and recovery from surgery through 05/06/2007. The Commission further finds that the Injured Worker's "layoff," which occurred three days prior to previously scheduled surgery on 11/06/2006, can not be deemed to be a "voluntary abandonment of employment" so as to preclude eligibility for temporary total disability compensation, pursuant to State ex rel. BOC Group, General Motors Corporation v. Indus. Comm. (1991), 58 Ohio St.3d 199. In BOC, the Court held that it is immaterial whether there is a causal connection between the injury and the termination in cases where the Injured Worker has been laid off by the Employer. The Court further held that, as a general rule, where the Employer lays off the Injured Worker, the layoff is considered to be involuntary departure from the workforce. According to the Injured Worker's testimony at today's hearing, he would have continued to work at Belterra but for his impending back surgery. The Injured Worker did not quit nor was he terminated from his employment, but instead he was "laid off" by Belterra. Finally, the Commission is persuaded by the Injured Worker's testimony that his layoff was planned to coincide with his surgery.
 {¶ 45} 23. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse *Page 17 
of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 47} Pursuant to R.C. 4123.56, TTD compensation is payable to a claimant when the allowed conditions in the claim prevent the claimant from performing his or her former position of employment. See State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 48} It is undisputed that voluntary abandonment of the former position of employment can preclude payment of TTD compensation.State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44. In State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, 121, the court stated as follows:
 * * * [F]iring can constitute a voluntary abandonment of the former position of employment. Although not generally consented to, discharge, like incarceration, is often a consequence of behavior that the claimant willingly undertook, and may thus take on a voluntary character. * * *
 {¶ 49} In State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.
(1995), 72 Ohio St.3d 401, the court characterized a firing as "voluntary" when that firing is generated by the employee's violation of a written work rule or policy that: (1) clearly defined the prohibited conduct; (2) had been previously identified by the employer as a dischargeable offense; and (3) was known or should have been known to the employee.
 {¶ 50} In the present case, it is undisputed that claimant's termination from his employment with relator constituted a bar to claimant's first request for TTD compensation. However, where a claimant who voluntarily abandoned his or her former *Page 18 
position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position of employment reenters the workforce and, due to the original industrial injury, becomes temporarily and totally disabled while working at the new job, the claimant is eligible to receive TTD compensation pursuant to R.C. 4123.56. See State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305, and State ex rel. Baker v. Indus. Comm.
(2000), 89 Ohio St.3d 376.
 {¶ 51} In the present case, it is equally undisputed that claimant reentered the workforce when he took the job with Belterra Casino. It is further undisputed that claimant was laid off from his job with Belterra Casino. Where the parties differ is in their opinion of whether that layoff constituted a voluntary or involuntary abandonment of his employment and whether it was the injury or the layoff that caused claimant's loss of earnings.
 {¶ 52} Relator argues that claimant's employment with Belterra Casino was seasonal in nature. As such, it had an identifiable beginning and an identifiable ending. Because claimant knew his employment with Belterra Casino would end at a certain time and because claimant elected to have his surgery after his employment with Belterra Casino ended, relator contends that claimant was not working at the time he had the surgery and again became disabled; therefore, his allowed conditions were not the cause of his lack of earnings. Relator also points to the November 3, 2006 office note of Dr. Skidmore wherein Dr. Skidmore stated that claimant had just finished a job for the season at one of the casinos working on the golf course and that he wished to proceed with the surgery.
 {¶ 53} On the other side, both claimant and the commission point out that, as a general rule, employer-initiated layoffs are considered to be involuntary departures from *Page 19 
employment and cite State ex rel. B.O.C. Group, General Motors Corp. v.Indus. Comm. (1991), 58 Ohio St.3d 199. As such, any lack of a causal connection between the termination and the injury has no bearing when the employer has laid off the claimant. Based upon this reasoning, claimant and the commission argue that TTD compensation was payable following claimant's surgery.
 {¶ 54} Voluntary abandonment is a factual question of intent and it is intended to be determined by the commission. In making its argument, relator focuses on Dr. Skidmore's November 3, 2006 letter and completely ignores his April 19, 2006 letter wherein he opined that claimant needed surgery at that time and indicated that his office was in the process of trying to make these arrangements. In April 2006, relator was still challenging the allowance of claimant's claim. A DHO had allowed the claim; however, the hearing before the SHO would not be held for three more months and a decision on the immediate payment of TTD compensation had yet to be addressed. Once it was determined that claimant's termination from his employment with relator constituted a voluntary abandonment, claimant could not receive TTD compensation even if he would have proceeded with the surgery at the time his doctor originally recommended. The only way claimant could receive TTD compensation following the recommended surgery was to reenter the workforce.
 {¶ 55} In the present case, claimant manifested his intent to return to work when he took the job with Belterra Casino. The magistrate finds that it was a factual determination for the commission to decide whether his layoff should be equated with a voluntary abandonment or an involuntary one. The SHO made the following findings: *Page 20 
 * * * [I]n August of 2006 the injured worker returned to work for a different employer. The injured worker testified at the hearing that he continued to work for the employer until 11/03/2006 when he took a voluntary layoff prior to his surgery. The Staff Hearing Officer finds that this voluntary layoff which occurred three days prior to previously scheduled surgery is not abandonment of employment. The Staff Hearing Officer further finds that this voluntary layoff does not constitute a period of unemployment unrelated to the recognized industrial injury which would preclude the payment of temporary total disability compensation pursuant to the decisions in State ex rel. Eckerly v. Industrial Commission of Ohio [105 Ohio St.3d 428, 2005-Ohio-2587] and State ex rel. McCoy v. Dedicated Transport, Inc. [97 Ohio St.3d 25, 2002-Ohio-5305].
 {¶ 56} If claimant would have scheduled his surgery for November 3, 2006, instead of November 6, 2006, he would have been working on the day of surgery and relator would not even be in a position to make the argument it is making. Because the real issue in this case centers upon claimant's intent, the magistrate finds that the commission did not abuse its discretion in finding that claimant not only reentered the workforce, but that it was his intent to continue to be employed.
 {¶ 57} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in determining that claimant's layoff from Belterra Casino did not constitute a voluntary abandonment of his employment and did not abuse its discretion in concluding that claimant was eligible to receive TTD compensation following the November 6, 2006 surgery. As such, this court should deny relator's request for a writ of mandamus. *Page 1