[Cite as *State ex rel. James v. Wal-Mart Stores, Inc.*, 2014-Ohio-2279.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Norman James, Jr., :

          Relator, :

                                      No. 13AP-3

v. :

                                (REGULAR CALENDAR)

Wal-Mart Stores, Inc. and :
Industrial Commission of Ohio,
                      :

          Respondents. :

                                                :

D E C I S I O N

Rendered on May 29, 2014

*Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A.,* and *Theodore A. Bowman,* for relator.

*Roetzel & Andress, LPA, Douglas E. Spiker, Timothy J. Webster* and *Alexander J. Kipp,* for respondent Wal-Mart Stores, Inc.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Norman James, Jr., filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant him temporary total disability ("TTD") compensation.

{¶ 2} In accord with Loc.R. 13 of the Tenth District Court of Appeals, the case was assigned to a magistrate to conduct appropriate proceedings. The parties stipulated the

pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision containing detailed findings of fact and conclusions of law. A copy of the magistrate's decision is appended hereto. The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.

{¶ 3} Counsel for relator has filed objections to the magistrate's decision. Counsel for Wal-Mart Stores, Inc. ("Wal-Mart"), relator's former employer, has filed a memorandum in response. The case is now before the court for a full, independent review.

{¶ 4} Relator has had a series of serious injuries to his neck, resulting in neck surgery. He returned to work after the last surgery and was injured again, fracturing a screw in the cervical fusion. Another surgery was required.

{¶ 5} After his return to work, Wal-Mart placed relator in a new managerial position which required significantly more physical labor. Relator left his employment with Wal-Mart because he felt physically unable to perform the additional physical labor.

{¶ 6} Relator did not leave the workforce altogether. He went to work for Petco and soon followed that with employment at Casper Automotive. He was fired from the job with Casper Automotive, allegedly for excessive absenteeism. The whole situation is complicated by the fact that between the end of his work with Wal-Mart and the end of his work with Casper Automotive, relator was in an automobile collision. That fact makes it difficult to determine if the excessive absenteeism alleged was related to his injury on his job at Wal-Mart, his automobile collision or neither. The medical picture is further complicated by the fact that an additional medical condition was allowed in January 2009. That medical condition is "cervical canal stenosis."

{¶ 7} The first two objections filed on behalf of relator address the ending of his employment. The record before us clearly shows that relator chose to stop working at Wal-Mart based upon his subjective belief that he could no longer do the job. The medical evidence does not support his subjective belief. Therefore, the first two objections are overruled.

{¶ 8} The third objection reads:

THE MAGISTRATE ERRED IN CONCLUDING THAT THE
COMMISSION DID NOT ABUSE ITS DISCRETION IN ITS

### APPLICATION OF *ECKERLY* WITHOUT CONSIDERATION OF *ESTES EXPRESS*.

{¶ 9} *State ex rel. Estes Express Lines v. Indus. Comm.*, 10th Dist. No. 08AP-569, 2009-Ohio-2148 could apply to this situation, but requires a factual development of the reasons relator's employment with Casper Automotive ended. If relator missed work as a result of his automobile collision, *Estes Express* does not help him in his quest to receive TTD compensation. If the employment at Casper Automotive ended because of complications from his neck injuries, TTD compensation should be allowed.

{¶ 10} We sustain the third objection in part.

{¶ 11} We, therefore, find that the case should be returned to the commission for it to develop the facts surrounding the ending of relator's employment with Casper Automotive. If relator did, in fact voluntarily abandon that employment, he is not entitled to TTD compensation. If he lost the job due to his inability to make work on occasion due to his ongoing problems from injuries sustained at work, he may be entitled to TTD compensation. These issues need to be clearly addressed after further factual development.

{¶ 12} As a result of the above, we adopt the findings of fact contained in the magistrate's decision. We adopt the conclusions of law as to the termination of employment at Wal-Mart, but not as to the end of employment at Casper Automotive. We, therefore, grant a limited writ of mandamus which vacates the denial of TTD compensation for relator and compels the commission to further address the end of employment at Casper Automotive and to address relator's entitlement to TTD compensation once that issue has been resolved.

*Objections overruled in part and sustained in part; limited writ granted.*

BROWN, J., concurs.
SADLER, P.J., concurs in part, dissents in part.

SADLER, P.J., concurring in part, dissenting in part.

{¶ 13} Because I agree with the majority's disposition of relator's first and second objections to the magistrate's decision, but disagree with the disposition of relator's third objection, I respectfully concur in part and dissent in part.

{¶ 14} As the magistrate explained, because the record lacks evidence to support a conclusion that relator's departure from Casper was due to the allowed conditions in the claim, relator has not demonstrated an abuse of discretion in the commission's application of *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, rather than *State ex rel. Estes Express Lines v. Indus. Comm.*, 10th Dist. No. 08AP-569, 2009-Ohio-2148. Thus, for the reasons stated in the magistrate's decision, I would overrule relator's third objection.

{¶ 15} In conclusion, I would overrule relator's three asserted objections, adopt the magistrate's decision, including the findings of fact and conclusions of law, and deny the requested writ of mandamus. Because the majority does otherwise, I respectfully concur in part and dissent in part.

_____

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel. Norman James, Jr.,          :

        Relator,                                          :

                                     No.  13AP-3

v.                                                :

                           (REGULAR CALENDAR)

Wal-Mart Stores, Inc. and                         :
Industrial Commission of Ohio,

                             :

        Respondents.                                     :

                             :

---

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on January 29, 2014

---

*Gallon, Takacs, Boissoneault & Schaffer Co. L.P.A.,* and *Theodore A. Bowman,* for relator.

*Roetzel & Andress, LPA, Douglas E. Spiker, Timothy J. Webster* and *Alexander J. Kipp,* for respondent Wal-Mart Stores, Inc.

*Michael DeWine,* Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 16} Relator, Norman James, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his request for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation.

<u>Findings of Fact</u>:

{¶ 17} 1. Relator sustained a work-related injury on November 30, 2004 while putting up freight. He had lifted a box onto his shoulder and as he backed up he accidentally backed into a pole. The box he was carrying hit him in the neck and fractured a surgical screw from a prior surgery and necessitated a new cervical fusion surgery. Relator's workers' compensation claim was originally allowed for the following conditions:

> Neck spasm; mechanical complication of internal orthopedic device.

{¶ 18} 2. Prior to this injury, relator had undergone two surgeries resulting in fusion and the implantation of hardware. His work-related injury resulted in a broken screw necessitating a third surgery on May 23, 2005.

{¶ 19} 3. Following his surgery, relator was able to return to work with respondent Wal-Mart Stores, Inc ("Wal-Mart").

{¶ 20} 4. After relator returned to work with Wal-Mart, he was moved to night shift which included a change in his normal duties. According to relator, significantly more lifting and carrying was required of him on the night shift.

{¶ 21} 5. On April 20, 2007, relator left his employment with Wal-Mart. Pursuant to the exit interview, relator's termination was voluntary and he walked off the job. Although the form provided space for relator to add any additional comments concerning the nature of his departure with Wal-Mart, relator did not make any comments.

{¶ 22} 6. Thereafter, relator secured other employment with Petco. Approximately five to six weeks later, relator left Petco for a better paying position with Casper Automotive ("Casper").

{¶ 23} 7. Relator was terminated from Casper on November 16, 2007 for excessive abseteeism.

{¶ 24} 8. Relator has not returned to work since November 16, 2007.

{¶ 25} 9. According to the medical records, relator was involved in a motor vehicle accident in June 2007. According to an undated treatment note by Young Kim, M.D., relator's condition was getting worse.

{¶ 26} 10. In a letter dated December 24, 2007, Dr. Kim indicated that the results of a recent cervical MRI scan revealed the following:

> There are no obvious degenerated discs or obvious severe cervical canal stenosis. Your spinal fusion appears to be solid without any encroachment into your spinal cervical canal.

{¶ 27} 11. On January 8, 2009, relator filed a C-86 motion asking to have his claim additionally allowed for cervical canal stenosis and requesting the payment of TTD compensation beginning November 17, 2007, the day after he was fired from Casper.

{¶ 28} 12. The matter was heard before a district hearing officer ("DHO") on March 25, 2009. At that time, relator withdrew his motion for an additional allowance. The DHO specifically denied relator's request for TTD compensation from November 17, 2007 through January 17, 2008 because relator did not seek treatment from Brendan W. Bauer, M.D., during that time. The DHO did award TTD compensation beginning January 18, 2008.

{¶ 29} 13. Relator would ultimately have additional surgery on April 1, 2009.

{¶ 30} 14. Wal-Mart appealed the DHO's order and the matter was heard before an SHO on May 13, 2009. The SHO affirmed the prior DHO order finding first that TTD compensation could not be paid from November 17, 2007 through January 17, 2008 as Dr. Bauer did not have a valid basis for his opinion prior to his first evaluation of relator on January 18, 2008. The SHO agreed that TTD compensation should be paid beginning January 18, 2008 based upon the office notes and C-84 completed by Dr. Bauer. As part of the SHO's analysis, the SHO noted that relator voluntarily quit his employment with Wal-Mart on April 20, 2007, but that he did not voluntarily abandon the entire workforce because he returned to employment following the voluntary termination.

{¶ 31} 15. Wal-Mart's appeal was refused by order of the commission mailed June 5, 2009.

{¶ 32} 16. Thereafter, Wal-Mart filed a request for reconsideration which was heard before the commission on September 29, 2009. By this time, relator's claim had been allowed for the additional condition of aggravation of pre-existing cervical canal stenosis and the commission considered that new allowance in its order. The commission

granted Wal-Mart's request for reconsideration and denied the entire period of TTD compensation as follows:

> The Commission finds the medical evidence submitted by the Injured Worker specifically addressing the issue of the Injured Worker's temporary total disability compensation to be inconsistent and equivocal. The inconsistencies concern the date of first treatment of the Injured Worker, and the specific periods of disability certified by Dr. Bauer. As a result of the inconsistencies and equivocation in the Questionnaire, office notes and C-84 of Dr. Bauer, the Commission finds it is not "some evidence" on which to rely to base payment of temporary total disability compensation. See State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649.
>
> The Questionnaire completed and signed by Dr. Bauer on 12/18/2008, is inconsistent with the C-84 signed by Dr. Bauer on 12/18/2008. The Questionnaire indicates that Dr. Bauer first saw the Injured Worker on 01/18/2008 and that the Injured Worker was disabled "FROM 5/05 TO Totally disabled." The C-84 lists disability dates "From 11/07 To: 11/09 or later."
>
> Furthermore, the C-84 is unclear and equivocal. Dr. Bauer checked the box to indicate the diagnosis and prognosis were related to the history of injury contained on the form, but made further reference to the Injured Worker's history of surgeries in 2002, 2003 and 2005. Dr. Bauer indicated there were no pre-existing conditions that contributed to the diagnosis and/or disability, yet also indicated that the mechanism of injury involved in the workplace injury caused a substantial aggravation of the pre-existing condition(s): "Injury caused redo cervical surgery." The form addressed a redo surgery in 2003, as well as a redo surgery in "5/2005."
>
> The accuracy of the information contained in both of these forms is further brought into question in narrative reports from Dr. Bauer dated 02/12/2008 and 03/20/2009. In the 02/12/2008 report, Dr. Bauer wrote to the Injured Worker's family doctor, Dr. Bryan Kuns, that he, Dr. Bauer, was seeing the Injured Worker in neurological consultation on 02/12/2008. Further, Dr. Bauer indicated that "the patient was last seen by me and our group in 2002." The 03/20/2009 report of Dr. Bauer stated that the Injured

Worker "has been followed by myself and our group for the past 4 years."

Finally, the Commission notes that the Injured Worker has not submitted a medical report from Dr. Bauer which addresses the inconsistencies in the dates of treatment and the inconsistencies in the alleged periods of disability.

The Commission further finds that the medical evidence raises, but does not resolve an issue as to whether the Injured Worker's disability results from an intervening injury. The Injured Worker testified at today's hearing that he treated with his family physician, Dr. Kuns, since being off work from Wal-Mart. The Commission notes that the Injured Worker was involved in a motor vehicle accident on 06/01/2007. Dr. Kuns was the ordering physician for a cervical MRI on 11/30/2007. The "Clinical Information" section on the MRI stated "Numbness in both arms and left shoulder pain since car accident in June 2007. Previous cervical fusion." No records from Dr. Kuns have been filed to review relative to the necessity of this diagnostic testing, or the referral from Dr. Kuns to Dr. Bauer.

The Commission finds that other evidence on file does not clarify this confusion concerning the Injured Worker's alleged periods of disability and the cause of his disability. In what appears to be an abstract of office notes with handwritten notations there on, Young Kim, M.D. reported that the Injured Worker was last seen 2005 "and was tolerable and functional up until the spring of 2007. Things got progressively worse at that time. He was involved in a motor vehicle accident in June, 2007." Dr. Kim recorded a substantial list of cervical and other medical issues, and reported that the Injured Worker had not worked since November 2007 because the Injured Worker "was fired due to his absenteeism related to this problem." It is not clear which of the substantial medical conditions listed is "this problem." This Commission is uncertain if this office note is the item referenced in the Statement of Treating Physician signed by Dr. Kim on 05/21/2009. Dr. Kim clearly identified factors not related to the Injured Worker's industrial claim, i.e. the motor vehicle accident of June 2007, and the 2002 cervical fusion.

Based on the Injured Worker's failure to submit medical clarification regarding the above identified inconsistencies

and equivocal statements regarding treatment dates and disability dates relative to the periods at issue, as well as the unresolved issue of the intervening motor vehicle accident injury, temporary total disability compensation is denied.

{¶ 33} Because the commission found that relator had failed to submit medical evidence which would support his request for TTD compensation, the commission specifically declined to address Wal-Mart's argument that relator was ineligible for the payment of TTD compensation due to his voluntary abandonment of his employment with Casper.

{¶ 34} 17. On February 2, 2010, relator filed another request for TTD compensation beginning April 1, 2009, the date of his latest surgery.

{¶ 35} 18. A hearing was held before a DHO on February 25, 2010. The DHO determined that TTD compensation should be paid beginning April 1, 2009.

{¶ 36} 19. Wal-Mart appealed and the matter was heard before an SHO on April 15, 2010. The SHO vacated the prior DHO order and denied relator's request for TTD compensation. The SHO set forth the history of relator's claim, stating:

> The Injured Worker's industrial injury of 11/30/2004 occurred while he was working as an assistant manager at a Wal-Mart Store. As he was putting away freight, in the toy department, he lifted a box onto his shoulder. He then accidentally backed into a pole, while backing up to avoid someone in the aisle. When he struck the pole, the box hit him in the neck with enough force to fracture one of the screws in his cervical vertebra which was there from a prior anterior cervical fusion at the C6 level. Therefore, the Self-Insuring Employer previously allowed this claim for mechanical complication of internal orthopedic device, with neck spasm. This claim was subsequently expanded to include the condition of aggravation of pre-existing cervical canal stenosis, pursuant to the prior Industrial Commission order of 10/15/2009.
>
> The Injured Worker had surgery, under this claim, for a redo of the fusion of his cervical spine, at the St. Vincent Charity Hospital, in Cleveland, Ohio, on 05/23/2005. He was then able to return to his former position of employment, as an assistant manager at a Wal-Mart Store. However, his job duties were subsequently changed from that of a day shift assistant manager to a night shift assistant manager. The day

shift assistant manager position was mainly supervisory in nature, but the Injured Worker felt that the night shift assistant manager position was "a manager, in name only", and he was then really a "glorified stock person with a title." The night shift assistant manager position required him to unload freight, as well as to stock their storeroom and the shelves of the store. He felt that the physical labor involved was more than his cervical condition would allow. Therefore, the Injured Worker voluntarily quit his former position of employment with Wal-Mart on 04/20/2007.

The Ohio Supreme Court has previously held, in the case of State ex rel. Schack v. Indus. Comm. (2001), 93 Ohio St[.]3d 247, that an Injured Worker who leaves his former position of employment does not forfeit temporary total disability compensation eligibility, so long as his decision to leave his former position of employment is followed by another job - as opposed to abandonment of the entire labor market. In the instant claim, the Injured Worker subsequently found employment with Petco, after leaving his employment with Wal-Mart. Furthermore, he subsequently found other employment, at Casper Transport. However, the Injured Worker was subsequently terminated from his new position of employment, at Casper Transport, due to excessive absenteeism.

{¶ 37} The SHO then discussed the fact that relator requested TTD compensation beginning November 17, 2007, and acknowledged that period of compensation had previously been denied, stating:

That period of disability was previously addressed by the Industrial Commission, and denied, pursuant to the order from the hearing of 09/29/2009, mailed 12/03/2009. The Industrial Commission found that the medical evidence submitted by the Injured Worker to support temporary total disability compensation was inconsistent and equivocal. The physician certifying disability made reference to the Injured Worker's history of surgeries in "2002, 2003 and 2005", despite the fact that the recognized injury in this claim did not occur until 11/30/2004. The supporting medical evidence also specifically referred to, "a redo surgery in 2003, as well as a redo surgery in 05/2005." Also, the Industrial Commission made note of the fact that the Injured Worker was involved in a motor vehicle accident, on 06/01/2007, and that his attending physician, Dr. Kuns,

ordered a cervical MRI because of symptoms, "since the car accident in June, 2007." For all of the above reasons, the Industrial Commission of Ohio previously <u>denied</u> the requested period of <u>temporary total</u> disability compensation, as previously requested, <u>from 11/17/2007 through 09/29/2009</u>.

(Emphasis sic.)

{¶ 38} Thereafter, the SHO considered whether or not the commission had continuing jurisdiction to further address the issue of the payment of TTD compensation from April 1 through September 29, 2009, the date of the hearing before the commission on Wal-Mart's request for reconsideration wherein the commission had determined that relator did not meet his burden of proving entitlement to TTD compensation. The SHO noted that relator's counsel argued there were new and changed circumstances since September 29, 2009, that being relator's claim was additionally allowed for the aggravation of pre-existing cervical canal stenosis.

{¶ 39} However, the SHO specifically noted that, although the commission hearing was on September 29, 2009, the commission did not publish its order "until 12/03/2009 and, more importantly, the order itself specifically referred to the order granting the additional allowance and stated that, 'notwithstanding the granting of the additional condition, by Staff Hearing Officer order issued 10/20/2009, after this hearing, but before this order was issued, it is the order of the Commission that the portion of the Injured Worker's C-86 motion filed 01/08/2009, requesting temporary total disability compensation from 11/17/2007 through 09/29/2009, is denied.' " As such, the SHO concluded that the commission did not have continuing jurisdiction to address that portion of relator's request for TTD compensation for the period April 1 through September 29, 2009, as it was barred by res judicata.

{¶ 40} Thereafter, the SHO considered whether or not relator was entitled to TTD compensation from September 30, 2009 through April 15, 2010. The SHO concluded that relator was not entitled to compensation for that time period because, although he had secured other employment after he voluntarily abandoned his employment with Wal-

Mart, relator was not employed at the time of the recurrence of his disability.  Specifically,

the SHO stated:

> As previously stated above, the Injured Worker voluntarily quit his former position of employment, with the named Employer, Wal-Mart Stores Inc., on 04/20/2007. The Injured Worker subsequently obtained other employment, with two different Employers, Petco, Inc. and Casper Transport, Inc. However, the Injured Worker was terminated from Casper Transport, due to excessive absenteeism. Therefore, it is the finding of this Staff Hearing Officer that the facts and circumstances of the instant claim fall under the Ohio Supreme Court's hold in the Baker and McCoy cases.
>
> In the case of [S]tate ex rel. Baker v. Indus. [C]omm. (2000), 89 Ohio St. 3d 376, the Ohio Supreme Court held that an Injured Worker who has previously left his former position of employment is, once again, eligible to receive temporary total disability compensation, pursuant to R.C. 4123.56(A), if the Injured Worker re-aggravates the original industrial injury, while working at his or her new job.
>
> Likewise, in the case of State ex rel. McCoy v. Dedicated Transport, Inc. (2002), 97 Ohio St. 3d 25, the Ohio Supreme Court held that an Injured Worker who voluntarily abandons his or her former position of employment will, once again, be eligible to receive temporary total disability compensation, pursuant to R.C. 4123.56, if he or she re-enters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
>
> Furthermore, the facts and circumstances in the instant claim are even more analogous to the facts in the case of Eckerly v. Indus. Comm. (2005), 105 Ohio St. 3d 428, where the Ohio Supreme Court held that an Injured Worker who voluntarily abandoned his former position of employment was not entitled to the payment of temporary total disability compensation, when he was not employed at the time of the recurrence of his disability.
>
> Therefore, it is the order of this Staff Hearing Officer that the Injured Worker's request for the payment of temporary total disability compensation, for the period from 09/30/2009 through 04/15/2010, is hereby DENIED, based upon the finding that the Injured Worker had previously voluntarily

> abandoned his former position of employment and that, furthermore, he was <u>not employed</u> at the time of the recurrence of his disability, which required surgery on 04/01/2009.

(Emphasis sic.)

{¶ 41} 20. Relator's appeal was refused by order of the commission mailed May 12, 2010.

{¶ 42} 21. Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law:</u>

{¶ 43} In this mandamus action, relator contends that the commission abused its discretion: (1) by finding that he voluntarily abandoned his employment with Wal-Mart when his resignation was causally related to his industrial injury, and (2) by finding that the termination of relator's employment with Casper precluded him from receiving TTD compensation under *State ex rel. Eckerly v. Indus. Comm.*, 105 Ohio St.3d 428, 2005-Ohio-2587, without applying this court's holding from *State ex rel. Estes Express Lines v. Indus. Comm.,* 10th Dist. No. 08AP-569, 2009-Ohio-2148.

{¶ 44} The magistrate finds that the commission did not abuse its discretion by: (1) finding that relator voluntarily abandoned his employment with Wal-Mart, and (2) applying *Eckerly* instead of *Estes Express*, which does not apply here.

{¶ 45} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 46} R.C. 4123.56 has been defined as compensation for wages lost when a claimant's injury prevents a return to the former position of employment. *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982). Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to their former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own actions, rather than the injury, that precludes return to the former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.*, 29 Ohio App.3d 145 (10th Dist.1985).

{¶ 47} When demonstrating whether an injury qualifies for TTD compensation, it two-part test is used. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent the employee from returning to his or her former position of employment. *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987). However, only a voluntary abandonment precludes the payment of TTD compensation. *State ex rel. Rockwell Internatl. v. Indus. Comm.*, 40 Ohio St.3d 44 (1988). As such, voluntary abandonment of a former position of employment can, in some instances, bar eligibility for TTD compensation.

{¶ 48} The voluntary nature of any claimant's departure from the workforce or abandonment is a factual question which centers around the claimant's intent at the time of departure. In *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381 (1989), the Supreme Court of Ohio stated that consideration must be given to all relevant circumstances existing at the time of the alleged abandonment period. Further, the court stated that the determination of such intent is a factual question which must be determined by the commission.

{¶ 49} If it is determined that a claimant's departure from a job was voluntary, TTD compensation can be awarded only if the claimant has re-entered the workforce and, due to the allowed conditions from the industrial injury, becomes temporarily and totally disabled while working at the new job. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305. However, a claimant's complete abandonment of the entire workforce precludes the payment of TTD compensation all together. *Jones; State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376 (2000).

{¶ 50} As early as the March 25, 2009 hearing before the DHO, it appears that everyone acknowledged that relator had voluntarily abandoned his former position of employment with Wal-Mart. The issue was whether or not this voluntary abandonment precluded relator from receiving any TTD compensation. As the SHO stated: "[T]here is no issue regarding voluntary abandonment as the Injured Worker returned to other employment after he quit work with [Wal-Mart], the risk employer in April of 2007." Because relator became reemployed, the DHO determined that he was eligible for TTD.

{¶ 51} When the appeal from the March 25, 2009 DHO order was heard before the SHO on May 13, 2009, it was accepted that relator did voluntarily abandon his employment with Wal-Mart. As the SHO stated: "Therefore, he voluntarily quit on 04/20/2007." Again, Wal-Mart argued that this voluntary abandonment precluded an award of later TTD compensation. Because relator became employed again, the SHO determined that he had made himself eligible for an award of TTD compensation.

{¶ 52} When the commission granted reconsideration and conducted a hearing on September 29, 2009, the commission vacated the May 13, 2009 SHO order. Because the commission found that relator's medical evidence was insufficient to support an award of TTD compensation from November 17, 2007 through September 29, 2009, the commission specifically declined to consider Wal-Mart's argument that relator's voluntary abandonment of his former position of employment and subsequent voluntary abandonment of employment with Casper barred his entitlement to TTD compensation. Specifically, the commission stated:

{¶ 53} The Commission declines to address the Employer's argument that the Injured Worker was ineligible for the payment of temporary total disability compensation due to the Injured Worker voluntarily abandoning his later employment when the Injured Worker was fired by Caspar [sic] Transport on 11/16/2007. Regardless of the Injured Worker's work status on 11/17/2007, temporary total disability compensation is not medically supported.

{¶ 54} As evidenced by the above orders, it does appear that the parties never disputed the fact that relator voluntarily abandoned his former position of employment with Wal-Mart on April 20, 2007. The disputed issues have always been whether or not relator's subsequent employment with Petco and Casper rendered him eligible for TTD

compensation, and whether or not relator voluntarily abandoned his subsequent employment with Casper when he was terminated for excessive absenteeism on November 16, 2007.

{¶ 55} At this time, relator asserts that, the SHO who presided over the recent hearing on April 15, 2010, specifically found that he left his former position of employment with Wal-Mart due to the allowed conditions in his claim.

{¶ 56} Specifically, relator notes that the SHO stated: "He felt that the physical labor involved was more than his cervical condition would allow." The magistrate finds that relator's interpretation of the commission's order is incorrect.

{¶ 57} First, relator's argument ignores the other commission orders in the record which indicate that the parties never disputed that relator did, in fact, voluntarily abandon his employment with Wal-Mart on April 20, 2007, and that the only disputed issue (other than sufficiency of the evidence) was whether or not relator's subsequent employment made him eligible to receive TTD compensation. While the SHO who presided over the May 13, 2009 hearing found that although relator voluntarily abandoned his employment with Wal-Mart, relator had met his burden of proving that he did not abandon the entire workforce since he became re-employed with Petco and Casper, this order was vacated by the commission. As such, while it has been accepted that relator voluntarily abandoned his employment with Wal-Mart, the parties continued to disagree on the effect of relator's subsequent employment and termination.

{¶ 58} Second, instead of reading the one sentence in isolation, the magistrate notes that the commission specifically found that he voluntarily left Wal-Mart and noted that his voluntary departure from Wal-Mart would not necessarily preclude his entitlement to TTD compensation specifically because relator reentered the workforce. Specifically, the commission stated:

> He felt that the physical labor involved was more than his cervical condition would allow. Therefore, the Injured Worker voluntarily quit his former position of employment with Wal-Mart on 04/20/2007.
> The Ohio Supreme Court has previously held, in the case of State ex rel. Schack v. Indus. Comm. (2001), 93 Ohio St[.]3d 247, that an Injured Worker who laves his former position of employment does not forfeit temporary total disability

compensation eligibility, so long as his decision to leave his former position of employment is followed by another job - as opposed to abandonment of the entire labor market. In the instant claim, the Injured Worker subsequently found employment with Petco, after leaving his employment with Wal-Mart. Furthermore, he subsequently found other employment, at Casper Transport. However, the Injured Worker was subsequently terminated from his new position of employment, at Casper Transport, due to excessive absenteeism.

Therefore, the Injured Worker previously requested the payment of temporary total disability compensation from the date that he left Casper Transport, of 11/17/2007, through 01/08/2009 and continuing.

That period of disability was previously addressed by the Industrial Commission, and denied, pursuant to the order from the hearing of 09/29/2009, mailed 12/03/2009. The Industrial Commission found that the medical evidence submitted by the Injured Worker to support temporary total disability compensation was inconsistent and equivocal. The physician certifying disability made reference to the Injured Worker's history of surgeries in "2002, 2003 and 2005", despite the fact that the recognized injury in this claim did not occur until 11/30/2004. the supporting medical evidence also specifically referred to, "a redo surgery in 2003, as well as a redo surgery in 05/2005." Also, the Industrial Commission made note of the fact that the Injured Worker was involved in a motor vehicle accident, on 06/01/2007, and that his attending physician, Dr. Kuns, ordered a cervical MRI because of symptoms, "since the car accident in June, 2007." For all of the above reasons, the Industrial Commission of Ohio previously <u>denied</u> the requested period of <u>temporary total</u> disability compensation, as previously requested, <u>from 11/17/2007 through 09/29/2009</u>.

(Emphasis added; emphasis sic.)

{¶ 59} Before addressing whether or not relator's subsequent employment made him eligible to receive TTD compensation, the SHO again stated:

As previously stated above, the Injured Worker voluntarily quit his former position of employment, with the named Employer, Wal-Mart Stores Inc., on 04/20/2007.

(Emphasis added.)

{¶ 60} Contrary to relator's argument, the commission found that his departure from his employment with Wal-Mart was voluntary. This one sentence to which relator directs this court's attention is the only statement in the record indicating that his departure from Wal-Mart was anything other than voluntary. Besides consideration of the aforementioned prior orders, a review of the remainder of the stipulation of evidence supports the commission's determination.

{¶ 61} First, in his exit interview with Wal-Mart, relator never indicated that his allowed conditions were impacting his ability to perform his job duties at Wal-Mart. Second, relator left Wal-Mart in April 2007. There is no contemporaneous medical evidence in the record which would indicate that his departure from Wal-Mart was related to the allowed conditions in his claim. This lack of contemporaneous medical evidence cuts against relator's argument. Third, the evidence indicates that relator was involved in a motor vehicle accident in June 2007 and sought medical treatment thereafter. The evidence includes an undated medical report from Dr. Kim who specifically noted that relator's overall condition was getting worse after the June 2007 motor vehicle accident. While the record does contain an MRI and an x-ray from November 2007, as the commission stated in earlier orders, relator did not seek treatment until January 18, 2008 when he first saw Dr. Bauer. As such, the evidence supports the commission's determination that the medical evidence was insufficient to show that relator's allowed conditions necessitated his departure from his employment with Wal-Mart. In light of the above, the magistrate finds that the commission did not abuse its discretion when it determined that relator's departure from his employment with Wal-Mart was voluntary.

{¶ 62} After acknowledging that his departure from Wal-Mart was voluntary, the commission specifically acknowledged that relator's eligibility for TTD compensation did not end because relator subsequently became employed by Petco and then by Casper. As the Supreme Court of Ohio indicated in *McCoy*, despite the fact that an injured worker voluntarily abandons their employment with their former employer, the injured worker can again be entitled to an award of TTD compensation if, while working at their new job, they again become disabled.

{¶ 63} According to the evidence, relator was terminated from his employment with Casper due to excessive absenteeism.  Relator appears to argue here that his excessive absenteeism was due to the allowed conditions in his claim.  As such, relator asserts that his departure from Casper was not voluntary, but was involuntary.  Alternatively, relator asserts that his termination from Casper was an employer initiated departure and asserts that the commission should have conducted an analysis pursuant to *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401 (1995).  However, there is nothing in the record which would indicate that relator ever raised this alternative issue with the commission or that relator presented any evidence which would support this contention.  Ordinarily, reviewing courts do not consider errors which the complaining party could have called, but did not call, to the lower court's attention at the time it could have been avoided or corrected.  *See State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), and *State ex rel. Gibson v. Indus. Comm.*, 39 Ohio St.3d 319 (1988).

{¶ 64} Even if this argument were to be considered, there is no contemporaneous medical evidence in the record which would indicate that relator left his employment with Casper due to the allowed conditions in his claim.  In the absence of that contemporaneous medical evidence, relator's argument is not supported by any evidence in the record.

{¶ 65} Relator's final argument is that the commission abused its discretion by applying *Eckerly* when the commission should have applied this court's decision from *Estes Express*.  For the reasons that follow, this magistrate disagrees.

{¶ 66} Shawn N. Eckerly sustained a work-related injury.  Three months later, Eckerly was fired for unexcused absenteeism.  The commission declared that Eckerly's discharge constituted a voluntary abandonment of his former position of employment pursuant to *Louisiana-Pacific.*

{¶ 67} At sometime thereafter, Eckerly sought an award of TTD compensation which the commission denied.  Although Eckerly's claim was allowed for additional conditions, the court noted that there was no evidence that Eckerly was gainfully employed for any specific length of time after his discharge from his former position of

employment. The commission denied Eckerly's request for TTD compensation and Eckerly filed a mandamus action which this court denied.

{¶ 68} In affirming this court's decision, the Supreme Court of Ohio stated:

> The present claimant seemingly misunderstands *McCoy*. He appears to believe that so long as he establishes that he obtained another job—if even for a day—at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to *McCoy* and all other TTC cases before and after: that the industrial injury *must remove the claimant from his or her job*. This requirement obviously cannot be satisfied if claimant had no job *at the time of the alleged disability.*

(Emphasis sic.) *Eckerly* at ¶ 9.

{¶ 69} In citing the Supreme Court's decision in *Eckerly*, the commission specifically noted that, at the time relator alleged that he again became disabled, he was not working. While relator acknowledges this, he argues that the commission abused its discretion by not applying this court's analysis from *Estes Express*.

{¶ 70} In *Estes Express,* Jason Chasteen sustained a work-related injury during the course of his employment with Estes Express. A short time thereafter, Chasteen was terminated for supplying false information regarding his medical treatment. As such, Chasteen's departure from his employment with Estes Express was found to be voluntary.

{¶ 71} Chasteen subsequently re-entered the workforce as a golf ranger at Belterra Casino Resort & Spa ("Belterra Casino"). Chasteen was laid off from this position on November 3, 2006. That same day, Chasteen was re-examined by Bradley Skidmore, M.D., who noted that Chasteen continued to have a combination of low back pain, left leg radicular pain with numbness in his left lateral calf, as well as a positive strait leg raise on the left and a negative strait leg raise on the right. Chasteen underwent surgery on November 6, 2006 and sought an award of TTD compensation. The commission determined that Chasteen was entitled to an award of TTD compensation. Specifically, the commission's order stated:

> Pursuant to the Staff Hearing Officer order issued 07/29/2006, the Injured Worker was found to have voluntarily abandoned his former position of employment as

a loading dock worker for violation of a written work rule. Thus, the payment of temporary total disability compensation was denied at that time. The Commission now finds, however, that the Injured Worker returned to work for a different employer, Belterra Casino, in August of 2006. Therefore, pursuant to *State ex rel. Baker v. Industrial Commission* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355, also know[n] as "*Baker II,*" the Injured Worker is entitled to temporary total disability compensation should he be disabled from work at Belterra Casino due to the allowed injury.

The Commission finds that the Injured Worker last worked for Belterra Casino on 11/03/2006. He underwent a laminectomy for the allowed conditions in this claim on 11/06/2006, and was subsequently off work due to the allowed conditions and recovery from surgery through 05/06/2007. The Commission further finds that the Injured Worker's "layoff," which occurred three days prior to previously scheduled surgery on 11/06/2006, can not be deemed to be a "voluntary abandonment of employment" so as to preclude eligibility for temporary total disability compensation, pursuant to *State ex rel. BOC Group, General Motors Corporation v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 569 N.E.2d 496. In *BOC,* the Court held that it is immaterial whether there is a causal connection between the injury and the termination in cases where the Injured Worker has been laid off by the Employer. The Court further held that, as a general rule, where the Employer lays off the Injured Worker, the layoff is considered to be involuntary departure from the workforce. According to the Injured Worker's testimony at today's hearing, he would have continued to work at Belterra but for his impending back surgery. The Injured Worker did not quit nor was he terminated from his employment, but instead he was "laid off" by Belterra. Finally, the Commission is persuaded by the Injured Worker's testimony that his layoff was planned to coincide with his surgery.

*Id.* at 44.

{¶ 72} Estes Express filed a mandamus action in this court arguing that Chasteen was not working on November 6, 2006 when he had surgery. Therefore, inasmuch as he was not working, he could not establish a loss of wages and was not entitled to an award of TTD compensation.

{¶ 73} This court ultimately concluded the fact that Chasteen was laid off from his position with Belterra Casino was employer initiated and was therefore involuntary. Finding that his departure from the workplace was involuntary, this court rejected Estes Express' argument that, because Chasteen was not working at the time he became disabled, he was barred from receiving TTD compensation.

{¶ 74} Relator again continues to argue that, either he was absent from the workforce due to the allowed conditions in his claim, or his discharge from Casper was employer initiated, like a lay-off and, pursuant to this court's finding in *Estes Express*, an employer initiated termination does not bar the receipt of TTD compensation.

{¶ 75} Aside from the fact that relator was terminated from Casper due to excessive absenteeism, relator has not presented any evidence to support a finding that his excessive absenteeism was due to the allowed conditions in his claim or that he argued that his employer-initiated termination violated the principles of *Louisiana-Pacific* and does not bar his subsequent entitlement to an award of TTD compensation. It was relator's burden to prove that the absences were due to the allowed conditions in his claim. As the commission noted in its order, relator failed to present sufficient medical evidence to support his contention that his departure was due to the allowed conditions. As such, relator has failed to demonstrate that the commission abused its discretion when it applied the rationale from *Eckerly* and, finding that he was not working at the time he became disabled, he was not entitled to an award of TTD compensation.

{¶ 76} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his request for TTD compensation, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).